## L. T. DEAL v. STATE.

No. A-9056.  Aug. 21, 1936.

(60 Pac. [2d] 408.)

Norman H. Wright, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, J. This appeal is from a judgment of conviction of rape in the first degree, punishment having been assessed at imprisonment in the penitentiary for a term of 35 years.

The information in substance charged that in Oklahoma county on the 4th day of July, 1935, the defendant, L. T. Deal, did then and there willfully, unlawfully, feloniously, and by force and violence overcoming her resistance, did have sexual intercourse with Marie Eslick, a female person and not the wife of said defendant.

The petition in error sets out a number of errors, but counsel for appellant has abandoned all except two: First, that the evidence is not sufficient to sustain the verdict of the jury, and particularly it is claimed that the verdict is the result of passion and prejudice; second, that the punishment assessed is excessive.

The undisputed facts as deduced from the state's evidence are as follows: The prosecutrix, Marie Eslick, age 37 years, married but separated from her husband, lived with her mother in Oklahoma City, south side. Mrs. Claudia Richardson, mother-in-law of a sister of the prosecutrix, was staying with them, and before leaving the place on the 4th of July to attend a picnic, it was arranged that she should make a date for the prosecutrix and call her that afternoon. Having received this call between 5 and 6 o'clock that afternoon, the prosecutrix left her home, took a street car, and went to the end of the Central street car line, and there met Mrs. Richardson, Mr. Pearl Mills, and the defendant. She was introduced to the defendant. Taking a cab they were driven to a place on Twelfth street and there they all drank beer. From there they visited several other places where beer or home brew was sold. At one of these places another cab was called. They visited the pump station where the defendant worked, and he gave the men there three or four bottles of beer. Between 8 and 9 o'clock they were driven to the outskirts on the southeast part of the city.

The prosecutrix testified that she was in the back seat with the defendant; Mr. Mills said he was sick and wanted to get out, and the cab stopped and he with Mrs. Richardson got out; the defendant told the cab driver to drive on; that after driving a ways told him to stop; he then told the cab driver to take a walk; the cab driver said that he was past due calling up the office and would go and call in and report; that she asked him not to leave, and he said he would not be gone very long.

The details of her relation need not be repeated here, except to say that in substance her testimony was that she refused to submit and the defendant by force and vio-

lence overcoming her resistance accomplished an act of sexual intercourse; that during the struggle he reached into the car, picked up a jack, and hit her on the head with it, rendering her unconscious. When the cab driver returned she told him to put her in the front seat; that all her clothes had been torn off except for an elastic girdle and one stocking; that they started back and picked up Mr. Mills and Mrs. Richardson; and shortly after the defendant got out and paid the driver, she told the cab driver to drive to the police station; from there they went to the sheriff's office, and from there they sent her to the Oklahoma General Hospital, where she received emergency treatment, and remained there several days; that on July 30, 1935, she filed a petition in the district court of Oklahoma county against the Capitol Hill Cab Company for $7,500 damages resulting from her injuries.

Clint Holman testified in substance: That as a cab driver he answered a call to 2900 block South Santa Fe, and arrived there about 7:30 that evening; that two couples got into his car and he drove them around to several places and finally drove east on Twenty-Second street; that Mr. Mills and Mrs. Richardson were in front, and Mr. Deal and Mrs. Eslick were in the back; that he drove about a mile east of Capitol Hill, then turned north into a lane, and Mr. Mills and Mrs. Richardson got out of the car; that he pulled up about a block beyond and stopped, and Mr. Deal told him he could take a walk. He said: "If you folks do not object, I will go down to the gasoline plant and call my office and report." Mr. Deal said: "All right." Mrs. Eslick never said anything. That when he returned about 20 minutes later the defendant was standing near the car and said, "See if you can get Mrs. Eslick into the car, she has passed out." She was lying on the ground by the side of the car; she

asked him to assist her to the front seat, which he did; that she did not have any clothes on, and he picked up a piece of clothing and laid it over her; that he turned, drove back, and picked up Mr. Mills and Mrs. Richardson. Reaching Twenty-Second and Byers, Mr. Deal said: "I will get out here, I live right around here." That he paid for the cab services, and paid him to take these people on home. When he started on, Mrs. Eslick said: "He beat me up and raped me, take me to the police station." Arriving at the station the sergeant said, "You had better take her to the county," and he brought her to the sheriff's office. The deputy sheriff there told him to take her to the Oklahoma General Hospital, and he did. It was then about 11 or 11:30 p. m.

Dr. Sam Beatty testified: That about midnight, July 4th, he received Mrs. Eslick as a patient at the Oklahoma City General Hospital. An examination showed a laceration between one and two inches in length on the head; that her right arm had been bitten in several places; that she had injuries on her right thigh, and on her right breast; that there was an abrasion on the inside lip of the vagina. And gave as his opinion that some person had recently had sexual intercourse with her.

On the part of the defense, Mrs. Claudia Richardson testified that she had a talk with Lee Deal that day with reference to arranging a date for him with Marie Eslick, and she telephoned her and they met Mrs. Eslick at the end of the South Central bus line; that she had been drinking and did not remember anything after the party left the first bootlegging joint they visited.

S. J. Ray testified that he worked for the British American Oil Company and went with the defendant that day to a beer joint on Southeast Eleventh street; that Mr.

Pearl Mills and Mrs. Richardson were there, and Mrs. Richardson arranged a date for Mr. Deal with some woman, and then called this lady up over the telephone and reported back to Mr. Deal that the arrangement had been made; that Mr. Deal then asked him for a loan of $5; he only had a $20 bill and he gave him the bill; that the next morning he went to the county jail and there Mr. Deal gave him back $8; that Mr. Deal's eyes at that time were swollen and his face was all scratched up.

It appears from the record that this conviction was upon a second trial. By agreement of the parties the testimony of Mr. Pearl Mills at the first trial, as shown by the transcript, should be read to the jury. He testified in substance that he was a barber, had lived in Oklahoma City 20 years; that he was one of the party that evening driven around together and stopping at places to drink beer; that when they were driven out in the country, he was sick and asked to get out, and with Mrs. Richardson he left the car; it was then driven on; that within 30 or 40 minutes the car returned and picked them up; Mr. Deal left the car near his house; Mrs. Eslick said that she had been raped and struck on the head; her clothing was missing; she had something thrown over her; that he went on with her to the police station and the sheriff's office, and then to the Oklahoma General Hospital.

The defendant testified in his own behalf, denying the charge: That he was 28 years old, married, wife and two children; that while in his teens he pleaded guilty to a charge of larceny and was sentenced to a term of one year at the Granite Reformatory; that in 1931 he pleaded guilty to a charge of larceny and was sentenced to a term of one year in the state penitentiary; that on the afternoon of July 4th, he met Mr. Mills and Mrs.

Richardson in a beer joint on Southeast Twelfth street; Mrs. Richardson arranged a date for him with some woman; they called a cab and were driven to the end of the bus line at Twenty-Fifth and South Robinson; there they met and he was introduced to Mrs. Eslick; from there they visited several places where home-brew was sold; later another cab was called and they proceeded to visit several places where beer was sold; then they drove to the place where he worked and he gave one of the men two or three bottles of beer; then they visited another place where beer was sold and a dance was going on, and they danced a little; after that they visited another beer joint; then they drove out on Southeast Twenty-Second street, ten or twelve blocks, and turned off of the main road a block or two and the car stopped; Mr. Mills and Mrs. Richardson got out; then they went on about a block, and he told the driver to stop; the driver said he had to report into the office every hour, and he told him to take a walk, that he would find a telephone at the pump station.

He further testified:

"We were sitting there talking and hugging and necking; she asked for a match, and in getting it I missed my money; I said, 'Have you got my money?' she said, 'No'; I said, 'You have got my money and you had better give it up'; she said, 'I haven't got your money'; I said, 'If you don't give me that money I am going to bust you on the jaw'; she said, 'If I have got your money and you think you can get it back that way you had better just try it'; and after some more words I proceeded to bust her in the jaw; she clinched me around the neck, scratched my face, and had her finger in the corner of my eye; she was choking me, I bit her arm and we rolled out on the ground, we were clinched when we fell out of the car, it was a rough and tumble fight, I didn't hit her with a jack, I didn't attempt to have intercourse with her against

her consent, she finally handed me my money, I didn't insist on having intercourse with her, and I didn't tell her I was going to force her to submit, and the only cause of that fight and tussle there was the result of her taking my money. The taxi driver came up, I told him she was drunk, that she had passed out, she told him to help her in and put her in the front seat. We drove back and picked up Mr. Mills and Mrs. Richardson, passing near my home I told the driver to stop, I got out and paid the cab driver, they said they were ready to go home, I asked him how much more that would be, he told me and I paid him."

The testimony is voluminous, over 400 pages, but the foregoing statement is sufficient to show that the jury was justified in finding that she resisted to the fullest extent of her ability, and that her resistance was overcome by force and violence on the part of the defendant.

The instructions given by the court, to which no objection was made or exception taken, submitted to the jury every element of the offense charged, and submitted the included offense of assault with intent to rape.

It is both the spirit and intention of our law that sentences shall be imposed in criminal cases for the protection of society and the reformation of the criminal, and sentences should be imposed in keeping with the spirit of the law. Upon a careful consideration of the whole case, our conclusion is that the punishment assessed by the jury is excessive, and in a measure the result of passion and prejudice. In view of the undisputed facts, we are of opinion that justice requires a modification of the judgment and sentence from a term of 35 years to a term of 15 years' imprisonment in the state penitentiary. Carrying the sentence, thus modified, into execution will be sufficient, we think, to teach the defendant his duty and obligation to his family and those about him.

As thus modified, the judgment of conviction is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.