HAROLD VARNER v. STATE.

No. A-9724.   May 9, 1940.
(102 P. 2d 615.)

Tom Wallace, of Sapulpa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jesse L. Pullen, Asst. Atty. Gen., and Sim T. Carman, Co. Atty., of Pawhuska, for the State.

BAREFOOT, J.  The defendant was charged in the district court of Osage county with the crime of rape in the first degree; was tried, convicted and sentenced to serve a term of 15 years in the penitentiary, and has appealed.

The only assignment of error relied upon for reversal of this case is that the evidence is insufficient to sus-

tain the judgment and sentence, and that the court erred in failing to sustain a motion for a directed verdict.

The defendant relies upon the cases of McLaurin v. State, 34 Okla. Cr. 324, 246 P. 669, and Wines v. State, 7 Okla. Cr. 450, 124 P. 466. The state relies upon the cases of Deal v. State, 59 Okla. Cr. 385, 60 P. 2d 408, and Work v. State, 63 Okla. Cr. 433, 75 P. 2d 1161.

The facts as revealed by the record, and briefly stated, are: A junior and senior banquet of the Berryhill school in Tulsa county was being held on the night of May 13, 1938. The prosecutrix, whose name at the time was Mary Ruth Kinney, who has subsequently married, was 16 years of age. She lived with her mother and father about one-half mile south of the school, and, on the above date, had walked by herself to the schoolhouse to attend the banquet. She was dressed in an evening dress. She there met Dorothy Burleson, a girl friend, and Burl Walker, whom she knew. Just as the two girls were leaving the banquet they met Burl Walker and the defendant, Harold Varner, near the door. Prosecutrix was introduced to defendant, whom she did not know, but whom she had seen at baseball games prior thereto. It was agreed that they would go driving in defendant's car, a Chevrolet coupe. Prosecutrix testified they agreed to take her home. Dorothy Burleson, in company with Burl Walker, walked to her home and changed her dress and they were afterwards picked up by the defendant and prosecutrix. They then went by the home of prosecutrix, but did not stop, but drove on through Sand Springs and into the country in Osage county. It was about 10 o'clock at night. Defendant was driving and prosecutrix sat next to him while Burl Walker was sitting in Dorothy Burleson's lap. Defendant drove into a side road where it was a wooded country and stopped.

Defendant got out of the car, and he and Dorothy Burleson had a conversation behind the car. Dorothy Burleson and Burl Walker then walked away from the car and were followed by defendant and prosecutrix. The couples then separated, and defendant and prosecutrix returned to the car from where they had walked, the point where they had first turned off the main highway.

Prosecutrix testified that she had complained to Dorothy Burleson and Burl Walker that defendant had attempted to mistreat her, and asked for their help, but that they did not do anything. She testified that when defendant asked her to go to the car, she refused, and defendant took hold of her and forced her to go back. That when they got to the car he threw her to the ground on her back and then bodily lifted her to the front fender of the car and by force overcoming her resistance had intercourse with her. Her evidence was that during the time of this act of intercourse, the other couple hollowed at them and asked if they wanted the cushion which they had taken from the car, and that defendant answered, "Yes," and that both Burl Walker and Dorothy Burleson returned to the car, and saw them in the act of intercourse. Prosecutrix further testified that these parties told them that they had heard someone in the woods nearby. She testified that the four of them entered the car and drove back to Sand Springs to a filling station and that defendant ordered cold drinks, but that she did not take any.

Defendant testified that prosecutrix drove the car after leaving the filling station. This prosecutrix denied. They drove again to a side road and turned off. This was in Tulsa county. Prosecutrix then testified that the performance was repeated just as it was in the first place as heretofore related. That after the other couple left,

the defendant, by force, placed her on the front fender of the car and had intercourse with her a second time. Her explanation of why she stayed in the car was that she thought she could keep friendly with defendant until she could get away. After this the defendant took all the parties home. Prosecutrix being first taken, and they arrived at her home about 1:30 a. m. Upon going into her home prosecutrix immediately informed her parents what had happened, saying that Harold Varner "had taken it away from her." The father and one of her brothers immediately went to Tulsa and reported to the officers of Tulsa county, and on the next morning a warrant for the arrest of defendant, charging him with the crime of rape by force in Tulsa county, was filed. The record does not disclose what disposition was made of that case. Defendant was afterwards charged in Osage county in connection with the first act as heretofore stated, and was tried and convicted.

On the morning after the date charged in the information prosecutrix was taken before the acting superintendent of the city board of health, Dr. James H. Neal. His testimony was as follows:

"Q. What examination did you make? A. Made a vagina examination with rubber gloves in the presence of the matron at the city jail, and on examination I found some roughness or rather a little oozing of blood, flesh spot or blueness there due to congestion of the venous blood in that area. In addition in this case—I examine so many cases, if you will pardon me—I had to refresh my mind, and I just phoned back long distance to Tulsa to get Mrs. Jackson and she was not on the case, and I was referred to Spencer, a laboratory man, and this patient had an examination on Friday morning, May 14th, at the city board of health laboratory, and that recalled to my mind the case, and I remember now that she had penetration in addition to this bruise, and it seemed that

she had some rough treatment recently. This is the way it was. I have it now in mind, the case. Q. From your examination and experience as a doctor and what you observed there, would you say that she had recent sexual intercourse? A. Yes, sir."

The state then offered in evidence the clothing worn by prosecutrix on the night of May 13, 1938, and they were examined by the jury. They showed blood stains.

The father and mother of prosecuting witness both testified to her telling them what had happened immediately upon her return home. The father and one of her brothers going to Tulsa to see the officers, and of the examination of prosecutrix by the acting superintendent of the city board of health.

Roy Raines, a deputy sheriff, testified to the arresting of defendant, but gave no material testimony.

The defendant testified in his own behalf and corroborated much of the testimony heretofore stated. He admitted that he had intercourse with prosecutrix on the two occasions mentioned, but said that it was voluntary on the part of the prosecutrix. That she removed a part of her clothing and placed them in the car. That the first act was finished before Burl Walker and Dorothy Burleson returned to the car. That when they returned to Sand Springs they stopped to get a cold drink and that two policemen whom he knew were there. That prosecutrix made no request or attempt to leave the car, and that she herself drove the car and he handled the brake. That when they returned home he made a date with prosecutrix for Monday night, and that she agreed to go with him.

This was the only evidence offered by defendant. It will be noted that neither Burl Walker nor Dorothy Burleson testified either for the state or the defendant.

Here was a case in which the defendant was charged with a crime that carried a death penalty as the maximum punishment and 15 years in the penitentiary as a minimum punishment. The defendant, under the law, had the right to produce the evidence which he desired to present. The same is true of the state. But under the facts as they appear in the record in this case, and taking into consideration the penalty provided by the statute, either the defendant or the state, it seems to us, owed a duty to the jury to place the two eyewitnesses, Burl Walker and Dorothy Burleson, upon the witness stand. The jury, in justice to any decision they might render, should have had an opportunity to know whether they corroborated the statement made by the prosecutrix or the statement made by the defendant. If they had corroborated the prosecutrix, the jury would have evidently returned a verdict of guilty; if they had corroborated the defendant, they would have in all probability returned a verdict of not guilty.

We have examined the facts in the four cases presented. The facts in the McLaurin and Wines Cases are dissimilar to the facts in the instant case. It is not necessary to point out the distinctions, as those who are interested may read the cases. In the McLaurin Case a strong motive was shown for the prosecutrix to testify as she did. The defendant had much evidence that corroborated his testimony. The defendant testified that he at no time had sexual intercourse with prosecutrix. Competent evidence was offered by defendant, and its admission was denied by the court. For all these reasons the case was rightfully reversed.

In the Wines Case the defendant, 50 years of age, was charged with rape upon his 16 year old adopted daughter. He denied having ever had any illicit relations

with her at any time. The prosecutrix said nothing about it until some time after she claimed it had happened. Her evidence was contradicted by several witnesses upon material facts. In that case the court said [7 Okla. Cr. 450, 124 P. 470]:

"The evidence shows that her person bore no marks or bruises and that her underclothes were neither stained nor torn; that she was examined by two physicians on the request of the prosecution a few days after the alleged outrage, and they found no injuries, laceration, or inflammation of her genital organs except the absence of the hymen, and they did not undertake to determine or state the cause of its absence. * * * The testimony of the physicians, taken as a whole, tends to discredit the testimony of the prosecutrix as to the violation of her person."

The trial court refused to give a requested instruction defining rape in the second degree. The court held that under the evidence this was clearly error, and reversed the case.

In the Deal Case, relied upon by the state, the facts are different than in the instant case, and, to our mind, much stronger. In this case defendant struck and bruised the prosecutrix, and the physical facts corroborated this, and the testimony of the physician who examined her "gave as his opinion that some person had recently had sexual intercourse with her." [59 Okla. Cr. 385, 60 P. 2d 409.] Other witnesses corroborated the testimony of the prosecutrix upon material facts. In this case the judgment and sentence was modified by this court from 35 years in the penitentiary to 15 years, the minimum punishment allowed under the statute under which defendant was charged.

The facts in the Work Case are more nearly in point than any of the cases cited. It is unnecessary to review

the facts in that case. We stated [63 Okla. Cr. 433, 75 P. 2d 1164] :

"It will thus be seen that there was a direct conflict in the evidence. Under the evidence of prosecutrix, defendant was guilty of rape by force and his punishment could have been assessed under the law at death or not less than 15 years in the penitentiary. Under defendant's testimony he was not guilty. If no force was used and the prosecutrix had voluntarily submitted to the act of intercourse, then he was not guilty of rape by force. The jury were the final arbitrators of his fate. They saw and heard the witnesses, observed their demeanor upon the stand. They had the best opportunity to judge the truthfulness of the statements of those witnesses. They were from the home county of both the parties, and under the law their judgment ought to be final. They found the defendant guilty of assault with intent to commit rape, and left the punishment to the court. The court assessed punishment at one year in the reformatory. The defendant has been ably represented. His defense was placed squarely before the jury, and they decided the issue against him. Under the law and facts he could have been given much more severe punishment. He has received a fair and impartial trial, and therefore the judgment of the district court of Cleveland county is affirmed."

This court has many times held that there is no rule of law which forbids a jury to convict for the crime of rape upon the uncorroborated testimony of the prosecutrix, provided they are satisfied beyond a reasonable doubt of the truth of her testimony. Johnson v. State, 5 Okla. Cr. 1, 4, 112 P. 760; Harris v. State, 27 Okla. Cr. 405, 228 P. 525; Malone v. State, 40 Okla. Cr. 102, 267 P. 486; Allen v. State, 35 Okla. Cr. 64, 248 P. 655; Lane v. State, 48 Okla. Cr. 84, 289 P. 357; Day v. State, 29 Okla. Cr. 49, 232 P. 122. But we have also held that a conviction will not be arbitrarily sustained upon such

evidence, and especially where her evidence is conflicting, or where she is contradicted by disinterested witnesses upon material statements. Morris v. State, 9 Okla. Cr. 241, 131 P. 731; Johnson v. State, 52 Okla. Cr. 397, 5 P. 2d 772; Ferbrache v. State, 21 Okla. Cr. 256, 206 P. 617; Douglas v. State, 19 Okla. Cr. 257, 199 P. 927; Williams v. State, 61 Okla. Cr. 396, 68 P. 2d 530.

In the instant case the prosecutrix is in no way contradicted except by the defendant. Evidence, heretofore stated, was offered by the state to corroborate her evidence, and while the jury and this court would have desired to hear and have recorded in the record the testimony of the witnesses, Burl Walker and Dorothy Burleson, yet neither the defendant nor the state saw fit to place them upon the witness stand. The defendant having been found guilty by the jury of his own county, who saw the witnesses, heard their evidence, and saw their demeanor upon the witness stand, and examined the exhibits, must stand the consequences. As an appellate court, it is not for us to say what our decision would have been had we been members of the jury.

The defendant has not asked for a modification of the judgment and sentence in this case, and this for the very good reason that defendant was given the minimum punishment provided by the statute of 15 years. Oklahoma Statutes 1931, section 2519, O. S. A., title 21, sec. 1115. If under the law we were permitted to modify this sentence, this court, after reviewing this record, would feel inclined, in the interest of justice, to substantially modify this judgment and sentence. This, however, is, under our Constitution, a question for the consideration of the Chief Executive of this state, who has the power to pardon and parole.

This defendant was unable to give bond pending the appeal of this case, and has been confined in the penitentiary during that time, and for this reason his case was advanced by the court.

For the reasons above stated, the judgment and sentence of the district court of Osage county is affirmed.

DOYLE, P. J., and JONES, J., concur.