UNITED STATES, Appellee

v

ALFRED G. KLUTTZ, Master Sergeant, U. S. Air Force, Appellant

9 USCMA 20, 25 CMR 282

No. 10,230

Decided March 14, 1958

*Major George M. Wilson* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ellis L. Gottlieb.*

*Captain John W. Fahrney* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John F. Hannigan* and *Lieutenant Colonel James R. Thorn.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was charged with burglary with intent to commit rape, in violation of Article 129, Uniform Code of Military Justice, 10 USC § 929, and with assault with intent to commit rape, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. By exceptions and substitutions, a general court-martial found him guilty of burglary with intent to commit indecent assault and of indecent assault, in violation of the same respective Articles. He was sentenced to be dishonorably discharged, to forfeit all pay and allowances, and to be confined at hard labor for seven years. The sentence approved by the convening authority provides for dishonorable discharge, total forfeitures, and confinement at hard labor for five years. The board of review affirmed, and the accused's petition for review to this Court was granted upon two issues, which are:

"1. Whether 'burglary with intent to commit indecent assault' is an offense cognizable under the Uniform Code of Military Justice; and if so, whether it is a lesser included offense of burglary with intent to commit rape.

"2. Whether the instruction of the law officer, as to voluntariness of the pretrial confession, that 'Basically, what you should consider that evidence of involuntariness and voluntariness for is to make up your minds individually whether you believe that statement, Prosecution Exhibit 9, to be the truth.' was erroneous and prejudicial."

One tine of the two-pronged first question has only specious logic to recommend it. Burglary in military law includes the elements of the common-law crime except that the felony intended has been limited to those offenses specified in Articles 118 through 128 of the Uniform Code, 10 USC §§ 918 through 928, respectively. Indecent assault is not defined in any Article but is recognized as an offense under Article 134. Paragraph 213*d* (2); paragraph 127*c*, page 224; Appendix 6*c*, Model Specification 120, Manual for Courts-Martial, United States, 1951; United States v Headspeth, 2 USCMA 635, 10 CMR 133. Syllogistic reasoning would seem to compel a conclusion that there is no crime in military law such as burglary with the intent to commit indecent assault. However, we do not choose to follow that course, for to do so would lead us into a position of absurdity.

Simple assault is a subject offense

of Article 128, and that Article is included within the range of ▮▮▮▮ Articles mentioned in Article 129. Since all the elements of simple assault are embraced within the offense of indecent assault, United States v Hobbs, 7 USCMA 693, 23 CMR 157, it is manifest that a finding of the greater offense necessarily includes a finding of the lesser, and so in this instance we have more than an adequate base to support the conviction. At the worst, we have a finding which includes a nonessential element.

The record certainly sustains either variety of assault, for the accused admitted the following facts in his pretrial confession which was received in evidence. On the night in question, he had been drinking at the noncommissioned officers' club. On his way home his thoughts centered on the victim, who, according to his story, had previously shown a friendly attitude toward him and had given him signs of encouragement. Knowing her husband was at the NCO Club at the time, he "wandered" into the house, finding the door unlocked. His entry awakened her and when she jumped up he hastened away. As opposed to that, the victim testified that she had fallen asleep but was awakened sometime later to find a male stranger draped diagonally across her bed with the top part of his body across her torso. The man was intermittently kissing her and suggesting she keep quiet. She further testified that during this sequence the intruder's hand was on her breast; that she jumped out of bed, but the man gave chase and held her fast by her forearms; that he shook her, tried to kiss her, and told her to be quiet, and that he fled when she called her dogs.

It would be reductio ad absurdum to regard these facts as failing to support a finding of burglary within Article 129. In fondling ▮▮▮▮ a woman not his wife against her will, the accused committed an offense under Article 128, and that brings his acts within the purview of the punitive Article for burglary.

Furthermore, we propound an additional reason to hold that the court returned a proper finding of burglary in this case. If every person's right in their dwelling house to be free from an intruder's offer to do them bodily harm is to be safeguarded, there is consistency in protecting the absolute security of the female occupant of that place against the intruder's taking of indecent, lewd, or lascivious liberties with her person. A woman's security of habitation and person is certainly rendered less sacred by the unlawful advances of the latter situation. Indeed, military law conceives indecent assault an offense of far greater severity than simple assault, an idea of which may be gleaned from a comparison of the maximum imposable sentences in the case of each crime.

We respond in the negative to the second branch of the first granted question, which is whether burglary ▮▮▮▮ with intent to commit indecent assault is a lesser included offense of burglary with intent to commit rape. Burglary remains the same crime, regardless of which intent actuates the entry. To view an analogous situation, in United States v Jenkins, 1 USCMA 329, 3 CMR 63, it was decided that desertion with intent to remain away permanently was not a lesser included offense of desertion with intent to shirk important service. The reasons for arriving at that conclusion were that Congress prescribed a number of variations in the intent with which the offense of desertion might be committed and did not classify them differently as to gravity. Each form of the offense carried the same maximum penalty, was defined specifically as the same offense and was a crime, to all intents and purposes, on the same level. Viewing this crime in the light of such criteria, a similar result must be reached in this case. Burglary can be predicated on one of many intents and the nature and prescribed punishment for the crime does not vary with the degree of gravity of the intent with which the entry is made. There is only a difference in punishment if, from the evidence, it appears that the intended offense was actually committed, in which case the

pleader must charge the substantive offense in a separate specification. Paragraph 208, Manual for Courts-Martial, United States, 1951. This much decided, the question now becomes whether the court could legally by exceptions and substitutions return the verdict it did.

Paragraph 74b(2), Manual for Courts-Martial, United States, 1951, permits the court to return findings by exception and substitution, provided that such action does not change the nature or identity of any offense charged in the specification or increase the amount of punishment that might be imposed for any such offense. By excepting the word rape and substituting the words indecent assault in a burglary charge, we have already shown that there is no change in the punishment imposable, and the crime is still burglary. But whether there is a fatal variance between the crime alleged and the offense found is a more difficult question.

In United States v Parker, 6 USCMA 274, 19 CMR 400, we said: "To make out the offense of burglary, it is essential that the specific intent alleged, . . . exist at the time of the breaking and entering." And this is the rule generally in civilian communities. As germane to the case at bar, Roberts v State, 136 Tex Cr 138, 124 SW2d 128 (1939), and Hooks v State, 154 Tenn 43, 289 SW 529 (1926), are authorities which support this principle. Thus, it would constitute a fatal variance if a burglary with intent to commit arson was alleged and a finding of burglary with intent to commit rape was returned by exception and substitution. In Simpson v State, 81 Fla 292, 87 So 920 (1921), the Supreme Court of Florida penned a discussion which might be applied profitably on this point:

". . . The mere breaking and entering a dwelling house is not a fact from which may be inferred that the accused intended to commit rape, or murder, or larceny, or arson, or any other felony which the pleader's fancy may induce him to charge in the indictment. Certain circumstances, unexplained, might tend to prove the intent, such as laying hold of a woman, or running after her in an attempt to do so, to establish intent to commit rape; the possession of a murderous weapon, ready for use, with other circumstances to establish the intent to kill; the possession of highly explosive material, to establish intent to commit arson; or the unexplained taking or attempting to take personal property, as evidence of intent to commit larceny."

The case at bar is not one of such obvious dichotomy of proof from allegation but, even though the court found from the facts proved the same generic intent as that alleged, the findings of intent must be considered as at variance with the intent alleged. To infer that the accused's intent was to gratify his lust or sexual desires from the female occupant of a house is not to meet the allegation that he intended there and then to have illicit sexual intercourse with her by force or violence and without her consent. True it is that the circumstantial evidence in this case would permit the inference of intent to rape to be drawn as well as the intent to indecently assault, but the court rejected the intent alleged in favor of the substituted intent. Since the findings returned do not embrace an intent to rape, the crime of which the accused was found guilty was not identical with the crime with which he was charged.

That, however, is not to say that the variance is fatal. An accused is not to be misled by or oppressed with the introduction of evidence of a crime other than the one he is alleged to have intended to commit and he must be protected against the institution of another prosecution for the same offense. These are the only reasons for the existence in the law of the doctrine of fatal variance. United States v Craig, 8 USCMA 218, 24 CMR 28; United States v Hopf, 1 USCMA 584, 5 CMR 12. The accused in this case is fully protected from being twice tried for the same offense by the charges, specifications, and testimony adduced at the trial. United

24

States v Hopf, supra. Since the intent to rape is closely akin to an intent to assault indecently and since the court could, from the testimony adduced, find that he had committed the act of burglary predicated on either mental state, this accused must be deemed to have been adequately prepared to meet the evidence which was introduced against him. Additionally, he could not have been surprised or misled by the burglary specification, for his defense to that charge would of necessity be substantially the same as a defense to the crime of which he was convicted. Furthermore, he was put on notice in the second charge that he should be prepared to defend against the same assault with intent to rape offense which supported the alleged burglary, for it was made the subject of a separate specification, and a lesser included offense of this crime is indecent assault. United States v Hobbs, 7 USCMA 693, 23 CMR 157; United States v Burden, 2 USCMA 547, 10 CMR 45. We, therefore, find against the accused on the first granted issue.

To answer the second granted issue, concerning the instruction of the law officer on the voluntariness of the accused's confession, we must consider the circumstances surrounding the taking of his pretrial statement. The statement contained inculpatory admissions which were an essential part of the Government's case since the victim was unsure of the identity of the burglar. The instruction of the law officer relating to voluntariness of the confession has been declared erroneous in a line of cases beginning with United States v Jones, 7 USCMA 623, 23 CMR 87, and since this is not an instance of self-induced error, reversal is required unless there was no issue raised about the involuntariness of the confession.

As a preliminary matter, it is necessary for us to state that this record does not disclose interminable questioning, brutal treatment, denial of necessities or any of the ingredients of an inquisition. At the most, we are confronted with a claimed inducement. According to the testimony of the two agents who conducted the inquiry, the accused was advised of his rights under Article 31 of the Code, 10 USC § 831, prior to their questioning about the offenses of which he was suspected, and the Article was read to him in its entirety. He acknowledged that he understood his privileges and, after an interview with one of the agents, in private at accused's request, he executed his pretrial statement. The accused took the witness stand for the limited purpose of showing the circumstances under which the statement was obtained. According to him, prior to having received any warning, he was told by one of the agents: "Kluttz, all the evidence is against you. I know you did it, and I could have come by your house and picked you up thirty minutes after the incident." Accused went on to say that after being warned, the other agent said that he was there to help him and if he made a statement it would be easier on him.

Appellate defense counsel contend the accused's testimony as related above indicates that he was denied his mental freedom because one of the agents falsely led him to believe that the investigators had uncovered sufficient evidence to convict him and because the other agent offered him some benefit if he confessed. We disagree with the contention. After the first statement was made to the accused, the fact is unassailed that he received all the advice to which he was entitled under Article 31. The record does not indicate that he furnished any information about the offense to the interrogators until after he was warned and knew of his right to remain silent. The first quoted statement was within fair investigative bounds and we cannot conceive of it having the influence upon the accused which is now asserted. Merely informing one suspected of the crime that independent evidence establishes his guilt should not influence him to seal his doom.

The second statement cannot be taken seriously as raising the issue of involuntariness. The accused admitted that he was not led to believe he would not be tried if he confessed. Nor, according to him, was he promised any kind of lenient treatment on condition that

25

he make a pretrial statement. The agent merely alluded to an opinion he entertained that a statement on the accused's part would redound to his benefit. The accused was a master sergeant, he was thirty-one years of age, he had been in the Service some twelve years, including six years as an air policeman, and that sort of assertion would not have sufficient influence to impair his mental freedom to admit or deny his participation in the crime.

There being no issue of voluntariness, the accused was not prejudiced by the law officer's erroneous instruction to the court that they should believe or disbelieve its contents depending upon whether the pretrial statement was executed voluntarily or not. To so fetter the concept of voluntariness is wrong but harmless when an issue of voluntariness is not raised.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

Judge FERGUSON concurs in the result.