**UNITED STATES, Appellee,**

v.

**Private First Class Rene MOLINARY-RIVERA, SSN 583–70–4793, United States Army, Appellant.**

**CM 440917.**

U. S. Army Court of Military Review.

30 June 1982.

---

Captain Paul J. Moriarty, JAGC, argued the cause for the appellant. With him on the brief were Major Raymond C. Ruppert, JAGC, Major Charles A. Byler, JAGC, and Captain David M. England, JAGC.

Captain Richard P. Laverdure, JAGC, argued the cause for the appellee. With him on the brief were Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, Major John T. Meixell, JAGC, and Captain Michael R. Smythers, JAGC.

Before CARNE, O'DONNELL and FOREMAN, Appellate Military Judges.

## OPINION OF THE COURT

PER CURIAM:

Contrary to his pleas the appellant was convicted of attempted rape. His approved sentence provides for a bad-conduct discharge, confinement at hard labor for six months, forfeiture of $334.00 pay per month for six months, and reduction to Private E–1.

The prosecution introduced two pretrial statements of the appellant. The first was taken shortly after the offense and was exculpatory. The second was taken about a month later and amounted to a confession to indecent assault. As he did at trial, the appellant maintains that the second statement was obtained in violation of Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831 (1976), and the Fifth Amendment. We agree.

The appellant, a native of Puerto Rico, has Spanish as his native tongue, and is of relatively low intelligence. His military records reflect that, although qualified for enlistment, his General Technical score was only 62 upon initial testing and 65 upon retesting. Numerous witnesses testified concerning his poor ability to comprehend the English language. Although the appellant had attended an "English as a Second Language" course for several months, his education counselor testified that the appellant's level of English comprehension was at the third-grade level. Soldiers who knew the appellant, including his squad leader, platoon sergeant, first sergeant, and platoon leader, testified that he had a poor ability to understand English and that except for basic military commands, instructions were usually translated into Spanish for him. If they were not translated, he would often pretend to understand and attempt to comply with them, generally unsuccessfully. He would often provide incorrect responses to questions he did not really understand.

A mental health counselor, to whom the appellant had been referred in conjunction with his court-martial, testified that due to the language problem he could not commu-

nicate effectively with the appellant. He therefore referred him to a Spanish-speaking counselor. At trial the appellant was furnished an interpreter and a Spanish-speaking assistant defense counsel.

The appellant was interviewed concerning the attempted rape by Special Agent Sneed who testified that he showed the appellant a rights warning/waiver form,[1] told him that he was suspected of attempted rape, and read to him verbatim the rights contained on the form. He also explained the appellant's rights in "laymen's terms." The appellant was told by Agent Sneed that Sneed could testify concerning what he (the appellant) "said or didn't say." Agent Sneed also explained to the appellant that he could request as counsel "someone in the SJA or military lawyer's office by name ...," meaning, according to Sneed, "the Staff Judge Advocates that support ... [the appellant's] unit." After this, Sneed asked the appellant if he understood his rights and the appellant replied that he did. Sneed then asked him if he wanted a lawyer; the appellant replied that he did not. Lastly, Sneed asked him if he would discuss the incident; the appellant replied that he would. Mr. Sneed then had the appellant and a witness sign the rights/waiver certificate.

In spite of the fact that the CID office normally used a Spanish version of the DA Form 3881 when Spanish-speaking suspects were interviewed and, if such forms were unavailable, an interpreter was usually used to explain their rights, neither action was taken in the appellant's case.

Following the rights advice procedure Mr. Sneed discussed the incident with the appellant, after showing him a copy of the victim's statement, which was in Spanish. Because the appellant "was experiencing some difficulty in expressing himself in English," an interpreter, Mr. Urriola, was called in. He translated the questions asked by Mr. Sneed and the appellant replied in Spanish. Mr. Urriola testified that the appellant had difficulty understanding English. After the questioning, the appellant's statement was typed in Spanish by Mr. Urriola. It was reviewed by the appellant, who also signed and swore to it. About an hour later, Mr. Urriola prepared an English translation of the confession, but did not review it with the appellant.

The appellant testified that he knew he could remain silent, but he did not know he could have a lawyer or that he could stop the questioning at any time. After the interview, the appellant asked a friend, Staff Sergeant Torres, to explain the rights to him that he had been advised of by the CID. Sergeant Torres did so in Spanish, using a "rights warning" card. Sergeant Torres testified that appellant's reaction to his explanation was surprise.

■ The government had the burden of proving that the appellant knowingly and voluntarily waived his rights to remain silent and to the assistance of counsel. We are not satisfied that they met their burden.[2]

■ Clearly, the appellant was deficient in English comprehension.[3] The appellant's difficulties with the English language were compounded by Sneed's explanations, which were ambiguous in one instance and incor-

1. Department of the Army Form 3881, Rights Warning Procedure/Waiver Certificate, 1 May 1978.

2. Although the evidence in question was introduced after the effective date of the Military Rules of Evidence, an initial session was held prior to that date. The parties agreed that the case would be tried under the old rules, which required voluntariness to be established by a preponderance of the evidence in order to permit the military judge to submit the statement to the court members, but which further required the court members to be convinced beyond a reasonable doubt that the statement was voluntary. Compare Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 140a(2) with Mil.R.Evid. 304(e). We need not decide whether the military judge was correct in holding the government to the higher standard, since we are not satisfied that the government met even the lower standard.

3. With regard to the appellant's understanding of his rights, this case is similar to United States v. Hernandez, 4 U.S.C.M.A. 465, 16 C.M.R. 39 (1954).

rect in another. When Sneed told appellant that he (Sneed) could testify about what appellant "said or didn't say," appellant may well have been misled about his right to remain silent or to terminate the interview. While Sneed testified that he meant only that he would not exaggerate anything the appellant said, Sneed's words can also be understood to mean that he could testify regarding appellant's silence if the appellant refused to talk or terminated the interview once it began. Without question, the post-arrest silence of an accused is inadmissible. *Doyle v. Ohio*, 426 U.S. 610, 616–18, 96 S.Ct. 2240, 2243–45, 49 L.Ed.2d 91 (1976). *Cf. Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). *Miranda*[4] carries the implicit protection that "silence will carry no penalty...." *Doyle* 426 U.S. at 618, 96 S.Ct. at 2245. Advice which suggests the contrary is incorrect.

Sneed's explanation of the right to individual counsel was incorrect. Sneed told appellant that he could request by name "someone in the SJA or military lawyer's office by name." When questioned by the judge, Sneed said that he was referring to "the Staff Judge Advocates that support, you know, his unit." This advice was incorrect. *See United States v. Anastasio*, 1 M.J. 198 (C.M.A.1975); *United States v. Copes*, 1 M.J. 182 (C.M.A.1975).

The findings of guilty and the sentence are set aside. A rehearing may be authorized by the same or a different convening authority.

---

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).