**UNITED STATES**

v.

**Airman First Class Joe C. GARCIA, FR 585–92–2101 United States Air Force.**

**ACM 23670.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 7 May 1982.

Decided 2 Feb. 1983.

---

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Richard A. Morgan.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Major Michael J. Hoover.

Before HODGSON, HEMINGWAY and MILLER, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

The accused was convicted, despite his pleas, of burglary, rape, larceny and assault, in violation of Articles 129, 120, 121, and 128, U.C.M.J. 10 U.S.C. §§ 929, 920, 921, 928.[1] The sentence extends to a dishonorable discharge, confinement at hard labor for 12 years, forfeiture of all pay and allowances, and reduction to airman basic.

I

Miss L is a Yugoslavian national who went to West Germany in 1980. She lived with her aunt and uncle and worked in a restaurant they own in Darmstadt. During the evening of 31 December 1981, she and members of her family left the restaurant to visit relatives and to celebrate the New Year. She was wearing a white shirt, black trousers, with a white coat and red boots. The group returned home about three o'clock in the morning. When they entered the apartment building, the street was empty.

Miss L undressed, put on a nightgown and went to bed. Some time between five and six o'clock she heard the door open slowly and noticed someone in the room. She thought it was her uncle's brother, but as the individual approached he fell across the bed and slapped her several times. She managed to scream her uncle's name before his hands closed on her throat. Subsequently, the assailant had sexual intercourse with her. Later, she escaped by running through the door to the outside courtyard.

Miss L's uncle, who lives in the same apartment, heard noises and screaming, but attributed the commotion to a domestic disturbance upstairs and went back to sleep. His wife awoke him whereupon he dressed and investigated. As he returned to the apartment Miss L came through the courtyard naked and screaming. She was "excited" and "out of control." After Miss L's aunt calmed her down, the police were called, and her uncle went outside to again investigate. He discovered an open window with an iron bar lying on the ground beneath it. He observed the accused departing the apartment through the window. When Miss L's uncle attempted to stop him, the accused kicked the uncle in the groin and ran down the street.

Miss L and her uncle chased the accused using her uncle's car, but lost him when he entered a dead end street. He was seen later running along an elevated passageway

---

1. The accused was acquitted of an additional allegation of assault and the convening authority disapproved a guilty finding of indecent assault.

between two stores; he jumped to the pavement, injuring his leg. When arrested by German police, he possessed a bracelet and lighter belonging to Miss L.

The German authorities released the accused to an American military hospital where he was treated for his injuries. When he was admitted the accused smelled of alcohol; a short time later a German doctor obtained a blood sample which established a blood alcohol concentration of 1.5%.

On the afternoon of 1 January 1982, the accused was interviewed by Special Agent Heining, Office of Special Investigations (OSI). After advisement of rights, the accused made a written statement indicating that he and some friends went to the "red light" district of Frankfurt on New Year's Eve and "partied" until about 0200 hours. With the accused driving, they left and, by chance, ended up in Darmstadt. While his friends were still asleep, he left the car and started walking. He saw a girl wearing a purple sweater, white pants and tan and black coat so he followed her. Before the door to her apartment building closed he sneaked in. The girl went into her apartment and closed the door; he waited a few moments and then went in. He entered the bedroom and "stripped down." She didn't see him as she came to the room and got into bed. The girl thought he was someone else and when he kissed her she screamed. He had sexual intercourse with her. Later as he was attempting to leave the house through the window, he fought with a man standing near the window. As he ran along the street he was chased by someone in a car. The car hit his leg as he jumped from the second level of a shopping mall. The accused further stated:

> I have never seen this girl before and this was just a spontaneous occurrence. I have never done anything like this before. I am truly sorry this happened even though this won't help change the past. I think it happened because of too much alcohol.

He indicated the bracelet was on the girl's arm when she was struggling, but had no idea how it got in his jacket pocket. The lighter he saw on the floor and picked up.

A subsequent police investigation disclosed the accused's palmprint on the kitchen window.

The accused's companions related that the group did considerable drinking that evening. The medical examination of Miss L disclosed no external injuries but there was a redness in the area of both biceps as if there had been a firm hand grip there. Immobile sperm were found in the vaginal secretion that could not have originated from an ejaculation occurring a few hours before.

II

The accused contends there is insufficient evidence to support a conviction for burglary. He argues that the evidence does not establish that he knew the apartment was occupied by Miss L, or indeed by anyone, and that his state of intoxication precluded him from forming the requisite intent.

The offense of burglary requires (1) that an accused break and enter the dwelling house of another person as alleged; (2) that the breaking and entering be done in the nighttime; and (3) that the breaking and entering be done with the intent to commit the alleged offense therein. Para. 208, M.C.M. 1969 (Rev.). For the offense of burglary to occur, it is essential that the specific intent alleged exist at the time of the breaking and entering. *United States v. Kluttz,* 9 U.S.C.M.A. 20, 25 C.M.R. 282 (1958). Further, proof of the intent alleged must be established beyond a reasonable doubt. *United States v. Nelson,* 13 C.M.R. 789 (A.F.C.M.R.1953); *accord, United States v. Wright,* 365 F.2d 135 (7th Cir. 1966). However, this specific intent may be shown by circumstantial evidence. *State v. Tolson,* 630 S.W.2d 611 (Mo.App.1982); *State v. Evans,* 110 Ariz. 407, 519 P.2d 1148 (Ariz.1974). The issue of intent, in this case the intent to rape, is a question for the fact finders to decide from all the surrounding circumstances and evidence. There are ample facts in this case from which to determine the accused's intent, i.e., his presence

in a total stranger's bedroom, unclothed, at six o'clock in the morning. His degree of intoxication is also a factual question. *See People v. Barnhart,* 638 P.2d 814 (Colo.App. 1981). The accused's intent at the time of breaking and entering may be proved by circumstantial evidence and may be inferred from the time and manner in which the entry was made and his conduct after entry. *Accord, Butler v. State,* 217 So.2d 3 (Miss.1968). In our view there is compelling evidence to support a conviction for burglary. *United States v. Kluttz, supra; Hamilton v. State,* 283 Ala. 540, 219 So.2d 369 (Ala.1969); *Johnson v. State,* 252 Ark. 50, 477 S.W.2d 196 (Ark.1969); *State v. Rich,* 183 Neb. 128, 158 N.W.2d 533 (Neb. 1968).

### III

■ The accused argues that his statement to Special Agent Heining was the result of illegal threats and inducements. The accused testified he was told by the OSI that the courts would be more lenient if he confessed to raping the girl. Additionally, the OSI told him he had to make a statement to get released to the Americans and the Germans would treat him worse. The accused also contended the OSI refused to give him food and medication until he made a statement, and lied when they said he was advised of his rights.

The government had the burden of proving that the accused knowingly and voluntarily waived his right to remain silent and to the assistance of counsel. Mil.R.Evid. 304(e); *United States v. Molinary-Rivera,* 13 M.J. 975 (A.C.M.R.1982). We are convinced the burden was met. The trial judge heard and saw the witnesses offered by both sides on the motion to suppress. By denying the motion and admitting the statement, he established his disbelief of the accused's testimony. We find nothing in the trial transcript to overturn his ruling. *United States v. Schneider,* 14 M.J. 189 (C.M.A.1982).

### IV

■ At trial the accused sought to establish that on 1 January 1982 the victim was pregnant, and had not told her family about her condition. It was the defense theory that because the victim, who was unmarried, had not told her relatives, with whom she was living, that she was pregnant, a rape allegation would provide a convenient excuse to explain the pregnancy.

In an out-of-court hearing[2] Miss L admitted she was pregnant when the assault took place, but indicated she had told her aunt. After hearing argument the military judge refused to allow the defense to pursue this line of questioning, invoking Mil.R.Evid. 412.

As Judge Foreman indicated in *United States v. Hollimon,* 12 M.J. 791, 793 (A.C.M. R.1982), the old procedure allowed a virtually unrestricted attack on a rape victim's sexual reputation and this:

> [F]requently resulted in evidence of doubtful probative value but high potential for prejudice, injection of irrelevant collateral issues, and unwarranted embarrassment for victims.

The fact that Miss L was pregnant at the time of the rape was of doubtful probative value considering the totality of the evidence which included the accused's admission that he had broken into her apartment and had sexual intercourse with her while she struggled. The military judge did not abuse his discretion in precluding the accused from questioning the victim about her pregnancy. Mil.R.Evid. 412(c)(3); *United States v. Holy Bear,* 624 F.2d 853 (8th Cir. 1980); *see United States v. Mahone, et al.,* 14 M.J. 521 (A.F.C.M.R.1982).

### V

■ The accused next contends the military judge erred in admitting a palmprint found in the victim's apartment by a policeman who did not testify at trial. Over defense objection the palmprint was admitted under Mil.R.Evid. 803(6) and (8). The accused maintains the document containing

2. See Mil.R.Evid. 412(c)(2).

the palmprint was essentially a police report prepared primarily with a view toward prosecution and lacks the trustworthiness of laboratory reports which are prepared by neutral and detached chemists and thus was inadmissible under Mil.R.Evid. 803(8). *See United States v. Vietor,* 10 M.J. 69 (C.M.A. 1980). He also argues that Mil.R.Evid. 803(6) does not include fingerprints found at a crime scene, but is limited to those routinely taken at police investigations and processing prior to confinement.

We note at the outset that in addition to the palmprint, the challenged document also contains notations in German entered by the technician who conducted the investigation and discovered the impression. Since the entries are in an untranslated foreign language we do not know what they indicate. Accordingly, under the facts of this case we are unwilling to hold that the exhibit was properly admitted.

Having concluded the trial judge erred, we must now assess the effect of this exhibit on the findings of guilty. As we stated in *United States v. Clark,* 12 M.J. 978, 979 (A.F.C.M.R.1982):

> Every error in admission of evidence does not require that a conviction be set aside. A ruling must be both wrong and harmful to constitute reversible error. Harmless error results where it is not reasonably probable that the fact finders were swayed by invalid evidence. (citations omitted)

In the trial, *sub judice,* the accused was positively identified by the victim, and had her bracelet and cigarette lighter when he was arrested. Additionally, as the accused was leaving the apartment through the window he assaulted the victim's uncle who chased him down a street in a car. Finally, the accused, in a written statement, admitted having sexual intercourse with the victim in her apartment while she was struggling. On these facts we find the admission of the palmprint to be harmless error because the evidence of the accused's guilt is overwhelming. *United States v. Clark, supra.* We are convinced no reasonable possibility exists that this exhibit might have contributed to the accused's conviction. *United States ex rel. Springle v. Follette,* 435 F.2d 1380 (2d Cir.1970).

We have considered the remaining assigned errors and have resolved them adversely to the accused. The findings of guilty and the sentence are

AFFIRMED.

MILLER, Judge, concurs.

HEMINGWAY, Senior Judge, not participating.