UNITED STATES, Appellee,

v.

Grady L. THOMPSON, Private First Class, U.S. Army, Appellant.

No. 63,631.

CM 8802347.

U.S. Court of Military Appeals.

Argued Oct. 3, 1990.

Decided Jan. 28, 1991.

For Appellant: *Captain Deborah C. Olgin* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Captain Alan M. Boyd* (on brief).

For Appellee: *Captain Marcus A. Brinks* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Martin D. Carpenter* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was convicted in accordance with his pleas of burglary and larceny, in violation of Articles 129 and 121, Uniform Code of Military Justice, 10 USC §§ 929 and 921, respectively.[1] Under the burglary charge, two specifications alleged that, at different times on the night of May 11, 1988, appellant unlawfully broke and entered the dwelling houses of Sergeant Hallman and Private Fuller, respectively, with the intent to commit larceny therein. The latter offense is the subject of this appeal.

■ According to his admissions during the providence inquiry, appellant entered Fuller's barracks room through an open, screenless window. A fully extended venetian blind covered the inside of the window, and appellant "had to shove the venetian blind aside" as he leaned over into the room.

Appellant now asserts that his pleas to this specification and Charge were improvident because the record does not reflect the necessary element of "breaking" required to constitute the offense of burglary, as set forth in Article 129. Specifically, he argues that moving aside venetian

---

1. The military judge, sitting as a general court-martial, sentenced appellant to a bad-conduct discharge, confinement for 3 years, forfeiture of $300.00 pay per month for 36 months, and reduction to Private (E-1). Pursuant to a pretrial agreement, the convening authority reduced the duration of confinement and forfeitures to 24 months, while approving the rest of the sentence.

blinds to gain entrance to a dwelling house does not constitute a "breaking" within the meaning of the statute. *See* para. 55b, Part IV, Manual for Courts–Martial, United States, 1984.

We do not agree and hold that appellant's pleas as entered and accepted by the military judge at trial were provident.

## I

During the providence inquiry, appellant admitted that Fuller's room was located on the first floor of a building housing Company C, 361st Signal Battalion, Fort Gordon, Georgia. He further described the window in question as being at waist level to him as he stood outside the building. By bending over and moving his head and hands into the room, appellant penetrated Fuller's dwelling inasmuch as his head and hands were inside. To do so, he had to "shove" aside the lowered venetian blind using his head and hands. At just this moment, before he could actually crawl through the window, Fuller entered the room and spotted him, whereupon he fled. Fuller sought assistance, and appellant was captured a short distance away by military police.

## II

Article 129 provides:

> Any person subject to this chapter who, with intent to commit an offense punishable under sections 918–928 of this title (articles 118–128), breaks and enters, in the nighttime, the dwelling house of another, is guilty of burglary and shall be punished as a court-martial may direct.

The elements of burglary under Article 129 are:

> (1) That the accused unlawfully broke and entered the dwelling house of another;
>
> (2) That both the breaking and entering were done in the nighttime; and

**2.** At common law, the breaking into the dwelling house of another with the requisite intent could be actual or constructive. The distinction remains today. When the law regards the defendant as the author of an opening made not

> (3) That the breaking and entering were done with the intent to commit an offense punishable under Articles 118 through 128, except Article 123a.

Para. 55b, Part IV, Manual, *supra*. There must be a breaking, actual or constructive.[2] What constitutes a breaking is explained in the Manual for Courts–Martial as follows:

> c. *Explanation.*
>
> \* \* \* \* \* \*
>
> (2) *Breaking.* There must be a breaking, actual or constructive. Merely to enter through a hole left in the wall or roof or through an open window or door will not constitute a breaking; but if a person *moves any obstruction to entry* of the house without which movement the person could not have entered, the person has committed a "breaking." Opening a closed door or window or other similar fixture, opening wider a door or window already partly open but insufficient for the entry, or cutting out the glass of a window or the netting of a screen is a sufficient breaking. The breaking of an inner door by one who has entered the house without breaking, or by a person lawfully within the house who has no authority to enter the particular room, is a sufficient breaking, but unless such a breaking is followed by an entry into the particular room with the requisite intent, burglary is not committed. There is a constructive breaking when the entry is gained by a trick, such as concealing oneself in a box; under false pretense, such as impersonating a gas or telephone inspector; by intimidating the occupants through violence or threats into opening the door; through collusion with a confederate, an occupant of the house; or by descending a chimney, even if only a partial descent is made and no room is *entered.*

by the defendant but rather the victim or some other person, there is a constructive breaking. 3 *Wharton's Criminal Law,* Burglary § 330 at 200 (14th ed. 1980). This case involves an actual breaking, if there was a breaking at all.

Para. 55c(2), Part IV, Manual, *supra* (emphasis added). As Chief Judge Sullivan has concluded in his separate opinion, this proviso tracks the modern view of the law of burglary or the view in effect when Article 129, UCMJ, 10 USC § 929, was adopted.

■ Appellant urges us to adopt a more expansive view of the concept of breaking and look at the intent of the victim in providing security for his dwelling. Thus, appellant urges us to find that a venetian blind is not the type of device which is intended as *security* against intrusion. *Cook v. State,* 63 Ga.App. 358, 11 S.E.2d 217 (1940) (pushing aside a curtain held not to be a breaking). We reject his argument.[3] It is clear that one is guilty of "breaking" under the common law and Article 129 if he "moves any obstruction to entry" (para. 55c(2)) if that "obstruction" has some physical attributes which can be reasonably understood as providing some security for the dweller and a barrier to the burglar's free entry. In the instant case, appellant pleaded guilty without contesting the physical attributes of the venetian blind. Thus, the Government is entitled to the inference that the venetian blind did obstruct appellant's entry and did provide some physical security to the room. Certainly, it provided as much security as

would an unlocked door. And logically, if the blind did not obstruct his entry, he would not have had to "shove" it aside to enter the room.

We have reviewed the entire record and are satisfied that appellant's pleas of guilty to burglary are provident.

The decision of the United States Army Court of Military Review, 29 M.J. 609, is affirmed.

Senior Judge EVERETT concurs.

SULLIVAN, Chief Judge (concurring):

This Court should not resolve the granted issues concerning the military crime of burglary solely on the basis of the "any obstruction" language of paragraph 55c(2), Manual for Courts–Martial, United States, 1984. A presidential regulation cannot dictate the scope or meaning of a congressional enactment such as Article 129, Uniform Code of Military Justice, 10 USC § 929. *See United States v. Watson,* 31 MJ 49, 52 (CMA 1990). The proper basis for construing this Federal statute is that noted by Congress itself, namely: the common law of burglary at the time our Code was enacted. *United States v. Knight,* 15 MJ 202, 205 (CMA 1983); *United States v.*

---

3. Today, by statute, many states have discarded breaking as an element of burglary. *See, e.g.,* Cal. Penal Code § 459 (Deering 1989); Colo. Rev. Stats. §§ 18–4–202; 18–4–203 (1981); Conn. Gen. Stats. Ann. § 53a–101 (1981); Ga. Code Ann. § 16–7–1 (1980); Idaho Code § 18–1401 (1972); Iowa Code Ann. § 713.1 (West 1984); Ky. Rev. Stats. Ann. § 511.020 (Baldwin 1980); Minn. Stats. Ann. § 609.58(2) (West 1988); Mont.Code Ann. § 45–6–204(1) (1987); Utah Code Ann. § 76–6–202 (1973); Wash. Rev.Code Ann. § 9A.52.020 (1975); Wyo. Stats. Ann. § 6–3–301 (1985). In its place, burglary is defined as "entering and remaining with intent." Such language frees burglary of the common-law vestige of breaking and avoids hair-splitting over whether a window was partially opened or closed; and whether it did or did not have blinds, et cetera. Such architectural analysis misses the gist of the offense, which has been described as follows:

" 'As aptly articulated by the Court of Appeal in *People v. Lewis* (1969) 274 Cal.App.2d 912, 920, 79 Cal.Rptr. 650, 655,

"Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety."

[Penal Code] Section 459, in short, is aimed at the danger caused by the unauthorized entry itself.' "

The essence of the crime of burglary, then, is the unauthorized entry.…

*People v. Statler,* 174 Cal.App. 3d 46, 219 Cal. Rptr. 713, 718 (5th Dist.1985), *quoting People v. Gauze,* 15 Cal.3d 709, 125 Cal.Rptr. 773, 776, 542 P.2d 1365, 1368 (1975).

*Kluttz*, 9 USCMA 20, 22, 25 CMR 282, 284 (1958). *See United States v. Brandenburg*, 144 F.2d 656 (3d Cir.1944). *Cf. Taylor v. United States*, —— U.S. ——, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); *United States v. Spencer*, 839 F.2d 1341 (9th Cir.), *cert. denied*, 487 U.S. 1238, 108 S.Ct. 2908, 101 L.Ed.2d 939 (1988). *See generally Sutherland Stat Const* § 50.02 (4th ed. 1984 Rev.).

The pertinent question of law presented in this case is whether shoving aside a lowered venetian blind enclosing an opened window would be a "breaking" at common law. Appellant impliedly asserts that a venetian blind is not a security device for the home whose movement is required by the common law to establish a "breaking" for purposes of a burglary conviction. *See Cook v. State*, 63 Ga.App. 358, 11 S.E.2d 217 (1940). He further argues that a venetian blind surely cannot be considered such a protective device where the record does not disclose whether its slats were open or closed. I disagree.

First, a fully extended venetian blind cannot be reasonably equated to the curtain of indeterminate size and substance which was at issue in *Cook v. State, supra*. At common law, the particular attributes of the object were important in determining or assessing its status as a security device. *See* 2 J. Bishop, *A Treatise on Criminal Law* § 91.2 at 70 (9th ed. 1923). Second, there may be circumstances in which a fully drawn venetian blind covering an open window might reasonably be con-

sidered a security device to protect a person's home. For example, in a tropical climate where air conditioning is not available and a closed window is not practicable, even a fragile barrier, properly arranged, might prevent entry or provide a warning concerning intruders. Third, since appellant pleaded guilty in this case, he cannot now complain of an undeveloped factual record on this question. *See United States v. Harrison*, 26 MJ 474 (CMA 1988).

Finally, I note that the change in the Manual provisions explaining a "breaking" for purposes of a burglary conviction at a court-martial does not otherwise support appellant's arguments in this case.[1] The open-window-negligence theory implicitly recognized in paragraph 208, Manual for Courts–Martial, United States, 1969 (Revised edition) and 1951, did not apply to the moving of objects other than the partially opened window itself. Moreover, the concern at common law with the negligent security efforts of the homeowner, rather than the criminal acts of the housebreaker, had somewhat dissipated by the time of the enactment of our Code. Despite the earlier Manual suggestions to the contrary, movement of a partially open window to gain entry was considered a breaking at common law by the time Article 129 was enacted. *See* Bishop, *supra* § 91.4 at 71; *A Treatise on the Law of Crimes* (Clark & Marshall) § 13.03 at 877 (6th ed. 1958).[2] Annotation, *Entry through partly opened door or window as burglary* § 2, 70 A.L.R. 3d 881, 883–85.

In this light, I conclude that paragraph 55c(2), 1984 Manual, *supra*, properly ex-

---

**1.** The version of paragraph 208 in the Manual for Courts-Martial, United States, 1969 (Revised edition), and that of 1951, states that "to enter ... through an open window ... even if left only slightly open and pushed farther open by the person entering, will not constitute a breaking." Paragraph 55c(2), Manual for Courts-Martial, United States, 1984, states that "opening wider a ... window already partly open but insufficient for entry ... is a sufficient breaking."

**2.** The Fourth Edition (Kearney) of Clark and Marshall, *A Treatise on the Law of Crimes* § 406

at 535–36 (1940), recognizes the legal theory that the negligence of the homeowner in leaving a window partially open may preclude a finding of breaking at common law. The Fifth Edition (Kearney) of this same work (1952) questions the efficacy of this restriction on breaking. (§ 410(a) at 582). The Sixth Edition (Wingersky) (1958) discounts this view, citing a 1946 state court case where some movement of the partially opened window was sufficient for a breaking (§ 13.03 at 878 n. 36).

plained the common law of burglary and the "breaking" required for this crime by Article 129. Moreover, appellant's pleas establish this offense under this standard. Accordingly, I join the majority opinion in affirming the decision below in this case.