UNITED STATES, Appellee

v.

JOHN H. HENDERSON, Corporal, U. S. Army, Appellant

4 USCMA 268, 15 CMR 268

No. 3106

Decided May 14, 1954

William R. Ellis, Esq., Lt Col George M. Thorpe, U. S. Army, and 1st Lt Ronald C. Meteiver, U. S. Army, for Appellant.

Lt Col William R. Ward, U. S. Army, and 1st Lt Benjamin C. Flannagan, U. S. Army, for Appellee.

## Opinion of the Court

Paul W. Brosman, Judge:

Henderson, the accused in the case before us, was found guilty, following trial by general court-martial, of the crime of rape—in violation of Article 120, Uniform Code of Military Justice, 50 USC § 714. He was sentenced to be dishonorably discharged, to forfeit all pay and allowances, and to be confined at hard labor for ten years. Intermediate reviewing authorities thereafter affirmed, and the case is here on petition to enable us to assess the sufficiency of the evidence to sustain the findings and to pass on the adequacy of the law officer's instructions. Necessarily, the facts must be set out in some detail.

II

The case for the Government is as follows. On October 20, 1952, the accused was driving from Chateauroux Air Base, France, to his home station at La Rochelle. At approximately 10:30 a.m. he stopped his "jeep" on the road near Mezieres, and sought directions of Miss Jacqueline Desjobert, a French National and the victim of the crime found here. Their conversation was understandably unproductive, for the accused spoke no French and the lady no English. Accused drove on—only to return within ten minutes. He located the prosecutrix in a narrow lane just off the highway. With the aid of a bilingual dictionary, he requested guidance to Orleans. As Miss Desjobert sought to comply in writing, the accused suddenly threw her to the ground beside the lane, and struck her repeatedly on the face. A further physical contest ensued, and at one point Miss Desjobert broke free only to be overtaken by the accused. Although the victim screamed, struggled, and thrust the accused away, he succeeded in accomplishing the act alleged. Within a short time petitioner desisted and departed

**270**

in his vehicle. Miss Desjobert returned to her home by a circuitous route and complained of the encounter. An examination of her person by a physician at about 4:00 p.m. on the day of the incident revealed evidences of recent sexual intercourse but no marks of violence.

The accused was apprehended within a few days and interrogated. He stated that he had been present at the scene of the alleged rape, and asserted that a consensual act had been attempted, but not accomplished. However, he admitted that when an automobile had passed on the nearby highway, he had muffled Miss Desjobert's screams with his hands. Blood stains of human origin were found on the underclothing admittedly worn by the petitioner on the day in question.

At the time of this incident Miss Desjobert was 39 years old. She had suffered from schizophrenia for some fifteen years. Her mental condition was manifested—among other indicia—by a fixity of facial expression. She was distinctly of a religious turn of mind and was—prior to the event under consideration here—a virgin. She is small in stature, somewhat emaciated, and weaker physically than the average woman of her age and build. She was said to possess the mentality of a child "somewhere between 8 and 10 years" of age, but understood that—having been placed under oath—her testimony became a matter of conscience.

### III

Defense counsel first urge, with both determination and confidence, that the testimony of the victim here is inherently incredible; that her statements were uncorroborated; and, in fact, that she consented to and participated in the sexual act alleged.

The area of the sexual offense comprises one of the few in which the current Manual for Courts-Martial sets forth in detail minimum standards for conviction. We are told, for example, in paragraph 153a of that Executive Order, at page 289, that "a conviction cannot be based upon the uncorroborat-ed testimony of an alleged victim in a trial for a sexual offense, . . . if such testimony is self-contradictory, uncertain, or improbable." The soundness of this rule is best demonstrated by the fact that it has found favor in many more jurisdictions throughout the country than any competitive evidentiary principle in the field.

In Arizona, "a conviction may be had upon the uncorroborated testimony of the prosecutrix unless her story is physically impossible, or so incredible that no reasonable man could believe it." State v. Pollock, 57 Ariz 415, 114 P2d 249, 250 (1941). Accord: State v. Haston, 64 Ariz 72, 166 P2d 141, 144 (1946); State v. Upton, 95 Ariz 93, 174 P2d 622, 624 (1946). California adheres to this rule. People v. Brown, 100 Cal App2d 207, 223 P2d 60, 61 (1950). And so it appears, does Illinois —although the rule is phrased somewhat differently. People v. Hiddleson et al, 389 Ill 293, 59 NE2d 639 (1945); People v. Vaughn, 390 Ill 360, 61 NE2d 546 (1945). "We have clearly held, however, that where the testimony of the prosecutrix is clear and convincing it is not necessary that she be corroborated in order to sustain a conviction." People v. De Frates, 395 Ill 439, 70 NE 2d 591 (1946), cert den 331 US 811, 67 S Ct 1201. Indiana falls within this grouping. Abshire v. State, 199 Ind 474, 158 NE 227 (1927). And in Kentucky it is the rule that "a verdict based on the uncorroborated testimony of the prosecutrix will be sustained, unless her story is so highly improbable as to prove that it is false." Hogue v. Commonwealth, 306 Ky 297, 203 SW2d 43, 44 (1947). The law of the following jurisdictions may also be examined with profit: Mississippi: Richardson v. State, 196 Miss 560, 17 So2d 799, 800 (1944); Missouri: State v. Burton et al, 196 SW2d 621, 622 (1946); Montana: State v. Moe, 68 Mont 552, 219 Pac 830 (1923); Oklahoma: Varner v. State, 69 Okla Cr 28, 102 P2d 615, 618 (1940); Roberts v. State, 87 Okla Cr 93, 194 P2d 219, 224 (1948); Pennsylvania: Commonwealth v. Kertezitis, 111 Pa Super 5, 169 A 417 (1933); South Carolina: State v. Gatlin, 208 S Car 414, 38 SE2d 238 (1946); Utah:

**271**

State v. Mills, — Utah —, 249 P2d 211, 212 (1952); Virginia: Young v. Commonwealth, 185 Va 1032, 40 SE2d 805· (1947); West Virginia: State v. Beacraft, 126 W Va 895, 30 SE2d 541, 544 (1944); and Wisconsin: Cleaveland v. State, 211 Wis 565, 248 NW 408, 409 (1933).

Sexual crimes are normally perpetrated in privacy and seclusion. There are seldom more than two persons who are familiar with the facts of the encounter—and the accused is one of these. Particularly do courts strive to serve two principles of justice in this arena—and both are worthy of the effort. On the one hand, civilized society demands a measure of atonement for the severe indignity done the victim of a rape. On the other, judicial conscience forbids the imposition of penal sanctions upon an accused person where to do so would "require us to forget as judges what we know as men." Accusations of sexual offenses against wholly innocent men are not unknown. 3 Wigmore, Evidence 3d ed, § 924(a). Thus we are content to follow—and indeed endorse—the Manual rule. However, we have concluded—and shall demonstrate in succeeding paragraphs—that Miss Desjobert's testimony was neither inherently improbable, uncertain, nor self-contradictory —and that it is sufficient, when considered with other facts of record, to sustain the conviction.

Let us look first to the circumstances under which this encounter took place. The accused and his victim had never met before the day in question. He spoke no French and she no English. The episode was brief in duration. The accused is a quite young Negro soldier. The victim is a 39 year old Frenchwoman, previously chaste and of a religious disposition and background. It rained continuously on the day in question, and the scene of the assault was unprotected—and situated apart from the main highway, and approximately two miles from the village in which the victim resided. It is doubtful that any of these circumstances tend to cast doubt on the testimony of the prosecutrix. Cf. Young v. Commonwealth, supra.

**272**

Miss Desjobert testified that the petitioner threw her to the ground and struck her five or six times. She screamed, struggled, and attempted to thrust him away. At one point she escaped, but the accused recaptured her and continued the assault. The pretrial statement of the accused confirms her statement that she screamed—at least when the parties heard an automobile pass on the highway. There is little point to outcries on the part of such a victim in the absence of hope of outside intervention—and the corroborated testimony of the victim to the effect that she sought to attract the attention of a passing motorist is strong in showing want of consent on her part. After the accused left the scene, Miss Desjobert made her way to her home and complained immediately. A prompt medical examination established that an act of sexual intercourse had taken place. We find nothing inherently improbable or uncertain in the concatenation of events thus shown, or in the testimony of the prosecutrix. On the contrary, there is a fundamental fitness in the acts performed by her—and all are consistent with the court-martial's implicit conclusion that she did not consent to the sexual act. Her responses to questions—as reported in the record—were always clear and rational and her testimony was unshaken on cross-examination.

IV

Some of the facts suggest that the victim's resistance might have been more sustained and vigorous. The fact that she bore no bruises at the time of the medical examination detracts somewhat from the Government's theory that she withheld · her consent ·from the appellant. But assuredly this fact does not render her testimony *incredible*. She testified that she was put in fear by the show of force made by him, and it was shown that she was physically weak and debilitated. In addition, her mental condition was such as to cause her to be overawed more easily by a demonstration of force than would be usual in a woman of her age.

Many of the older cases require that a rape victim have exerted her maximum physical effort in order that a conviction may be sustained. "But the law is no longer in this last-ditch stage. Whatever it may have been in other times, it is generally settled now that consent is not shown when the evidence discloses resistance is overcome by threats which put the woman in fear of death or grave bodily harm, or by these combined with some degree of physical force." Ewing v. United States, 135 F2d 633, 635 (CA DC Cir 1942), cert den 318 US 776. No court to our knowledge has been so demanding as to lay down a rule to the effect that a showing of wounds, bruises, or lacerations is a requirement essential to the substantiation of a claim of force in the accomplishment of a rape. Tennison v. State, 126 Tex Cr App 140, 70 SW2d 167, 168 (1934).

We prefer to adhere to a concept which requires that we determine evidential sufficiency in the light of the *totality* of the circumstances presented by the record. Torn clothes and bodily bruises are often evidence of force, but such evidence is often absent in the crime of rape. Force may be actual or constructive—and on occasion there may be present a combination of the two. "Whether or not garments be torn and bruises inflicted may depend upon several facts,—the quality of the garment and the nature and character of the force involved." Davis v. Commonwealth, 186 Va 936, 45 SE2d 167, 172 (1947).

The old rule of "resistance to the uttermost" necessarily assumed that, in the first instance, an accused is privileged to approach his victim, cast her to the ground, take indecent liberties with her—and that, unless she kicks, bites, scratches, and screams until physically and emotionally exhausted, or perhaps is rendered insensible, she will be deemed to have consented to the most intimate of all acts. " 'Such is neither justice, law nor sound reason.' " See People v. Cook, 10 Cal App2d 511,

52 P2d 538, 540 (1935). We are content to adhere to the view that a rape victim's resistance need only be such as to make a want of consent and actual resistance reasonably manifest—having regard to her age, her strength, and the surrounding circumstances. Thomas v. State, 69 Okla Cr 188, 101 P2d 283, 287 (1940). If there be such resistance in the face of sufficient force to create in the mind of the victim a real apprehension of dangerous consequences —and if her will is in fact overcome— we are willing to regard the evidence as sufficient to make out the crime of rape. State v. Dill, 42 Del 533, 40 A2d 443, 444 (1944).

As we read the present record, it may fairly have been concluded by the court-martial that this accused approached Miss Desjobert on the pretext of securing road information, struck her and thrust her to the ground, stifled her screams, overpowered her, and accomplished his evil purpose. This the court has found —and we cannot believe that the evidence was insufficient to sustain the conviction. State v. Brewster, 208 Iowa 122, 222 NW 6, 7 (1928).

Although we were to hold corroboration essential in this instance, we would feel constrained to conclude that sufficient corroborating evidence was presented. There was medical testimony to corroborate the victim's testimony as to penetration. There was a showing of fresh complaint. There was corroboration— and by the accused himself—of the fact that the woman had screamed, and that he had "slightly pushed her" to the ground. Moreover, there was an assertion by the accused in his pretrial statement to the effect that he had hastily left the scene for fear of being discovered. Finally, the geographical and other physical circumstances were wholly consistent with the testimony of the prosecutrix.

In the nature of a parting shot, the accused has seized on an observation offered by Miss Desjobert's physician to the effect that her mental condition was

often manifested by a fixity of facial expression. Accused argues that, although she may not, in fact, have consented to the act, she afforded him no indication of any state of mind save one of vague acquiescence in his conduct. Accused continues that he did no more than rely on her facial expression, and neither recognized nor had occasion to know of her underlying mental condition. The shortcoming of such a rationale is that the evidence effectively destroys it. Indeed, there was medical testimony to the effect that the prosecutrix was on occasion unable to express overtly her subjective feelings and ideas. But this is not to say that she could never reveal her true desires. She could and frequently did. This testimony—coupled with her testimony of resistance and the accused's pretrial admission that he felt impelled to stifle her screams during the incident—is more than enough to permit the inference that the prosecutrix brought home to the accused definite knowledge of her nonconsent.

Thus, we entertain no doubt that the evidence of record amply supports the court-martial's findings of guilty. We can reach no other conclusion unless we reject the Manual rule regarding corroboration in a case like the present, and tailor another and more rigorous one applicable only to the prosecutrix who suffers from measurable psychiatric disturbance. Because we cannot believe that existing principles do not deal with the problem adequately, we are unwilling to do this.

## V

At the conclusion of the evidence the law officer instructed as follows, *inter alia:*

"Rape is defined as 'the commission of an act of sexual intercourse by a person with a female not his wife, by force and without her consent. . . . *Force and want of consent are indispensable to the offense, but the force involved in the act of penetration will suffice if there is no consent.* Any penetration, however slight, is sufficient to complete the offense', provided there is this want of consent." [Emphasis supplied.]

This instruction, appellate defense counsel assure us, was prejudicially erroneous, for—they maintain—a prosecutrix in this setting must take stern measures to frustrate the designs of her assailant in a situation in which her resistance is not overcome by threats, and she is not unconscious, stuporous, or so mentally deficient as to be legally, unable to consent. We are told that it is axiomatic that want of consent is not shown by mere verbal protestations and a pretense of resistance. In short, the accused concludes that the italicized portion of the quoted instruction is appropriate only in certain unusual situations, of which this case is not an exemplar.

Accused's argument is sound so far as it goes, but we doubt that he has accorded sufficient consideration to the remainder of the instructions. Court-martial members were explicitly informed that " 'Mere verbal protestations and a pretense of resistance are not sufficient to show want of consent.' " They were expressly warned that the victim of an alleged rape must have taken such measures to frustrate the execution of her assailant's design as she is able to take under the circumstances. It was borne in on them that the resistance required to establish lack of consent must be determined on the basis of all the circumstances of the case and of the relative strength of the parties. Taken as a whole—and against a backdrop of all of the evidence offered —we believe that the instructions furnished by the law officer submitted the principal issue fairly to the triers of fact. United States v. Hattley, 3 USCMA 114, 11 CMR 114; United States v. Thomas [365107], 12 CMR 385, 391–392.

Although the law officer informed the court-martial that an act of intercourse with a woman who —to the accused's knowledge—was of unsound mind would amount to rape, we do not believe that this instructional infirmity can have prejudiced this accused. And this for the reason that the instruction bore no sufficient relation to the facts of the case. While seriously insane, a woman may—in the eyes of the law

274

—be incapable of consenting to an act of sexual intercourse, but this result does not follow where her mental impairment is less profound. Quite the opposite is true. A woman may consent to such an act unless her mental disorder is so severe that she is incapable of understanding the act, its motive, and its possible consequences. State v. Jewett, 109 Vt 73, 192 A 7, 8 (1937) ; Hacker v. State, 73 Okla Cr 119, 118 P2d 408, 412 (1941). Here again the possible effect of a dubious instruction must be measured against a background consisting at once of the language of its fellows, the Government's theory of the case, and the evidence adduced at the trial. In the case at bar the prosecution proceeded on the theory that a forcible rape had been committed, and made no sort of attempt to establish that the victim was incapable of giving consent to the act. Indeed, there was evidence of progressive improvement in Miss Desjobert's mental condition. There was no effort made to show that the accused had any slightest intimation of her impairment. While hardly appropriate, we cannot ground reversal on this questionable instructional phrasing.

## VI

Having concluded his instructions on the principal offense charged, the law officer proceeded to submit to the court the included offenses of attempted rape, assault with intent to commit rape, and assault and battery. It is now the position of the accused that the crime of indecent assault was also placed in issue, and that instructions should have been given on the elements of this offense. We have previously held that indecent assault is a lesser offense included within the crime of rape. United States v. Headspeth, 2 USCMA 635, 10 CMR 133. Our sole inquiry now, therefore, is whether this lesser offense was reasonably placed in issue—and we are sure it was not.

The pretrial statement of an accused is sufficient to raise an issue—United States v. Johnson, 3 USCMA 209, 11 CMR 209 —and we look to it for the facts relevant to our determination here. It will be remembered that the accused admitted sexual contact with the prosecutrix, insisted that this was effected with her consent, and denied that he had accomplished penetration. But running throughout the entire statement—and asserted at one point with painful bluntness—is the theme that he intended and desired to accomplish sexual intercourse, this and nothing less. Thus, if the court-martial had believed the prosecutrix concerning the issue of want of consent, and the accused as to a lack of penetration, either the offense of attempted rape or that of assault with intent to commit rape would have been shown by evidence. There was literally no evidence to indicate that the accused intended to gratify his sexual desires by any act short of the ultimate act of penetration. It is our conclusion that the offense of indecent assault was not reasonably placed in issue by any evidence in the case, and thus there was no error in the law officer's failure to instruct on the issue.

## VII

Accused has briefed numerous other assignments of error wholly outside the scope of the issues on which the petition for review was granted. Out of an abundance of caution, we have examined these contentions, but have found them to be singularly devoid of merit. It is unnecessary to lengthen this opinion by an extended treatment of these matters.

Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.