**UNITED STATES**

v.

**Senior Airman John D. STEWARD, FR 437–13–8444, United States Air Force.**

**ACM 24123.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 16 May 1983.

Decided 20 April 1984.

---

Before HODGSON, FORAY and MIL-LER, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

The accused's sexual encounter in the barracks with the dependent wife of a non-commissioned officer resulted in his conviction of attempted rape. The approved sentence extends to confinement at hard labor for 12 months, forfeiture of $382.00 per month for 12 months, and reduction to airman basic. We affirm.

### I

This was a vigorously contested trial which centered on whether the prosecutrix consented to group sex with the accused and his companion. The evidence at trial disclosed that Mrs. R.B. had an ongoing affair with Airman Sanchez, the accused's roommate, and the two of them would use his room in the barracks for a meeting place. The accused was aware of this relationship because when R.B. came to the barracks he was asked to sleep elsewhere, i.e., the couch in the dayroom.

Much of what happened during the early morning hours of 21 February 1983 is not in dispute. R.B. testified that she met Sanchez in the barracks where they went to his room and had sexual intercourse. Subsequently she became ill and went to the bathroom across the hall. She returned to the darkened room and lay on the bed. As she did so someone touched her. Although she knew it was not Sanchez because it was a "black arm," she was unable to identify the person as she was not wearing her glasses; * a second person also entered the room. These individuals were later identified as the accused and Airman Cheatham. R.B. stated that Cheatham sat on her, and when she screamed, he slapped her face and put his hand over her mouth. The accused was sitting by her legs rubbing her genital area. Eventually,

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Major Richard A. Morgan.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Major Robert E. Ferencik, Jr.

---

* R.B.'s vision, uncorrected, was "20/400." She was able to see at 20 feet what a normal person could see at 400.

Cheatham held her hands and had sexual intercourse with her. The accused, who was wearing a towel over his head, also had sexual intercourse with her.

Significant portions of R.B.'s testimony were corroborated by other persons who were present in the barracks or in the room. Airman First Class Crutcher, who was standing in the hall, heard R.B. say, "get lost," and when he opened the door he saw the accused and Cheatham in the room. He left and later heard a scream coming from the room. He went back and saw Cheatham, who was holding her hands in his, on top of R.B. He heard the accused, who had a towel on his head, tell Cheatham to "get up;" he saw the accused "get on" R.B. Sanchez also saw Cheatham "on top" of R.B. and saw her crying. Additionally, Airman Ransford was in the room while the accused, Cheatham and Crutcher were there. He heard the accused tell Cheatham to "hurry up man," and R.B. exclaim they "raped me." Earlier, he had heard a scream coming from the end of the hall where the accused's room was.

The accused admitted putting his arm around R.B., and her telling him to "get lost." He admitted he was there while Cheatham had sexual intercourse with R.B., and he admitted getting on the bed with her. He denied having sexual intercourse with R.B. or fondling her in any way. He maintained that R.B. appeared to consent to sexual intercourse with Cheatham, and only when she pulled the towel from his head and covered herself, did he think otherwise. At that point he immediately got up from the bed. The defense also offered evidence tending to negate the testimony that any screams were heard in the barracks. The defense also established that R.B. had told conflicting versions of the incident. The medical examination of R.B. disclosed no indication of trauma or injury; however, further testimony was adduced this was not unusual in sexually active individuals.

## II

Appellate counsel argue that the evidence does not establish beyond a reasonable doubt that the accused had the specific intent to rape the victim, and therefore the guilty finding as to attempted rape cannot stand.

Attempted rape consists of an overt act toward the commission of rape which amounts to more than mere preparation plus the concurrence of a specific intent to rape. *United States v. Hobbs*, 7 U.S.C.M.A. 693, 23 C.M.R. 157 (1957). The issue of intent, in this case the specific intent involved in an attempt to rape, is a question for the factfinders to decide from all the surrounding circumstances and evidence. Of course, this may be established circumstantially. *See United States v. Garcia*, 15 M.J. 685 (A.F.C.M.R.1983). The rule requiring the trier of fact to be convinced beyond a reasonable doubt as to the accused's guilt does not mean that the evidence must be free of conflict. The court is entitled to believe the testimony of government witnesses as against those testifying for the accused. *United States v. LeCappelain*, 9 M.J. 562 (A.F.C.M.R.1980); *United States v. Teeter*, 12 M.J. 716 (A.C.M.R.1981). In our view, there are sufficient facts in this case from which the court could determine the accused's intent, i.e., his presence in the room while his companion was having sexual intercourse with R.B.; his caressing and fondling R.B.; his admonition to Cheatham to "hurry up, man;" and finally his act of getting "on top" of the woman. True, he maintained that all of this was accomplished with R.B.'s consent, but the guilty finding resolved this issue against him. *See United States v. Herron*, 25 C.M.R. 888 (A.F.B.R. 1957); *see also United States v. Reese*, 24 C.M.R. 467 (N.B.R.1957). Weighing all the evidence and giving proper consideration to those who heard and saw the witnesses, we find the evidence established the accused's guilt beyond a reasonable doubt. Article 66(c), U.C.M.J., 10 U.S.C. § 866(c).

## III

The trial judge declined to give a defense requested instruction on mistake of fact. On appeal appellate counsel contend this was error as the accused was well acquainted with R.B.'s reputation for promiscuity; and this, coupled with the fact that group sex was apparently a routine occurrence with the accused's peer group, might have led him to mistakenly believe that R.B. would participate in such an arrangement.

 It is axiomatic that before a failure to instruct on a defense may be alleged as a ground for error, the evidence must show that the defense was reasonably raised. *United States v. Short,* 4 U.S.C.M.A. 437, 16 C.M.R. 11 (1954). Appellate counsel urge that because the accused's companions discussed the possibility that R.B. might agree to group sex, the accused had a "very reasonable expectation" that this would come to pass. While the accused and his friends might have had high hopes of this event happening, there is no evidence that R.B. expressed a desire, verbal or otherwise, that she was willing to engage in this type of activity. To the contrary she made it clear to the accused that he was to "get lost" when he made his initial overture.

The issue before the court was whether R.B. consented to the accused's attentions, and on this question the trial judge gave full and complete instructions. Mistake of fact was simply not raised. *United States v. Mahone,* 14 M.J. 521 (A.F.C.M.R.1982), *pet. denied,* 14 M.J. 454 (C.M.A.1982); *United States v. Perry,* 12 M.J. 920 (N.M. C.M.R.1982).

## IV

In *United States v. Sutton,* 15 M.J. 235 (C.M.A.1983), the Court of Military Appeals dismissed all charges because the supervisory authority took 321 days to act on the case. This was in accord with their holding in *United States v. Clevidence,* 14 M.J. 17 (C.M.A.1982), where the supervisory authority required 313 days to take his action.

In both *Sutton* and *Clevidence, supra,* the Court of Military Appeals found prejudice in that post-trial delay hindered the accused in obtaining civilian employment.

In the case at bar, while the accused does not point to any prejudice resulting from the time taken to act on his record of trial, *United States v. Banks,* 7 M.J. 92 (C.M.A. 1979), he maintains he is entitled to the same remedy afforded those in *Sutton* and *Clevidence, supra,* because of the lengthy post-trial delay in processing his case, i.e., 129 days from the date of trial until the convening authority took his action.

 We conclude that the convening authority's action was not so tardy as to require dismissal of the charges. The allegations under review are serious and the record of trial exceeds 700 pages. The accused identifies no prejudice and our examination of the record confirms none. *United States v. Milan,* 16 M.J. 730 (A.F.C. M.R.1983); *cf. United States v. Purdy,* 15 M.J. 689 (A.F.C.M.R.1983) (delay of 167 days between the trial date and supervisory action held not prejudicial).

The remaining assigned errors have been examined and are resolved adversely to the accused. *United States v. Kent,* 9 M.J. 836 (A.F.C.M.R.1980). The findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge, concurs.

MILLER, Judge (concurring):

Unlike my colleagues, I am convinced that, under the circumstances of this case, the victim could have stopped the accused's "amorous" activities, without fear of death or grievous bodily harm, by simply emitting a loud and continuous scream for help at any time during the twenty minute sequence of "sexual" activity that preceded the accused's crawling upon her. Additionally, I am uncertain as to whether, under the facts, here, the victim even took those measures to avoid being raped that a reasonable woman would have taken under similar circumstances. Under my interpretation of current military law pertaining to

510

the offense of rape, however, such findings are unnecessary for me to affirm a rapist's conviction.

Lest this opinion be misconstrued, I reiterate my concurrence in the majority's result, affirming the accused's conviction. I write separately to address what I perceive to be a serious analytical error developing in current case law.

Where, as in this case, a victim fails to take the measures to avoid being raped that a reasonable woman would likely take under similar circumstances, the Manual for Courts-Martial, 1969 (Rev.), para. 199a, allows the trier of fact to draw an inference that such a victim consented to her attacker's advances. The Manual does not, however, require the fact finder to draw this inference. Contrary to the analysis set forth by my brethren and recent courts, the Manual does not demand that a woman resist to the level of grievous bodily harm or even to the level of "reasonable" resistance to prove rape.

I

The pertinent facts of this case are practically "on all fours" with those of *United States v. Steele,* 43 C.M.R. 845 (A.C.M.R. 1971) and *United States v. Small,* 48 C.M.R. 170 (A.F.C.M.R.1974). In those cases the findings and sentence were ordered set aside. Accordingly, assuming those cases were correctly decided, it would seem, given my finding that the victim failed to reasonably resist, the same result must inure here.

In *United States v. Steele, supra,* all three judges, although writing separately, concluded that factual allegations such as exist in this case mandate acquittal from charges of "rape," at least in the absence of a "mistake of fact" instruction.

Judge Chalk, writing the opinion of the court, reached his conclusion by interpreting the language of M.C.M., 1969 (Rev.), para. 199a, as specifying "that an alleged rape victim *must reasonably manifest* her nonconsent or else be deemed to have consented." *Id.* at 848 [emphasis added.]

Judge Finkelstein, concurring, rested his conclusion upon what he perceived to be an accused's entitlement to a mistake of fact instruction when the facts reveal that the victim of a rape may not have reasonably manifested his or her lack of consent to the accused.

And Judge Collins, concurring in the result, combined elements of both his brethren's positions:

The Manual's requirement that the alleged victim of a rape *must reasonably manifest* her nonconsent is but another way of stating the objective standard to be applied by the finders of fact in resolving the issue presented by the affirmative defense [of mistake of fact.] [emphasis added.]

*Id.* at 849.

Looking to *United States v. Small, supra,* our own court applied a slightly different interpretation of para. 199a in a case involving an alleged forcible sodomy. The court found it to be "axiomatic that the standard of proof of the element of force and lack of consent in sodomy crimes is the same as that in rape crimes." *Id.* at 171. Applying its own interpretation of 199a, the majority found the victim had not

*reasonably manifested his [or her] lack of consent* by taking such measures of resistance as were called for by the circumstances; nor are we convinced that [the victim's] resistance would have been futile or that he [or she] ceased to resist only because of a reasonable fear of death or grievous bodily harm. *Accordingly, we find that [the victim's] unwillingness* in this case *was not sufficiently demonstrated so as to prove the essential element of force and lack of consent.* (Citation omitted.) (Emphasis added.)

*Id.* at 171–172.

If the Manual set out the standards enunciated by the Courts in *Small* and *Steele,* I would be compelled to find the accused in this case not guilty. However, neither the U.C.M.J. nor the Manual set forth such standards.

## II

Paragraph 199*a*, M.C.M.1969 (Rev.) states:

> Force and lack of consent are indispensable to the offense. Thus if the female consents to the act, it is not rape. The lack of consent required, however, is more than mere lack of acquiescence. If a woman in possession of her mental and physical faculties fails to make her lack of consent reasonably manifest by taking such measures of resistance as are called for by the circumstances, the inference *may* be drawn that she did in fact consent. Consent, however, will not be inferred if resistance would be futile, or where resistance is overcome by threats of death or great bodily harm, nor will it be inferred if she is unable to resist because of the lack of mental or physical faculties. In such a case there is no consent and the force involved in the act of penetration will suffice. All the surrounding circumstances are to be considered in determining whether a woman gave her consent, or whether she failed or ceased to resist only because of a reasonable fear of death or grievous bodily harm.

M.C.M., 1969 (Rev.), paragraph 199*a*.

Both *Steele* and *Small, supra,* seem to have confused the elements of proof of rape, namely, force and lack of consent, with the elements which raise the permissible inference that the victim consented, to wit: force and lack of resistance. This confusion is understandable in light of the numerous changes to 199*a* and the dearth of cases offering a serious analysis of this issue. In *United States v. Moore,* 15 M.J. 354 (C.M.A.1983), one of the few cases in which the Court of Military Appeals discussed 199*a,* the only case the majority cited on the issue of the victim's consent was almost thirty years old, *United States v. Henderson,* 4 U.S.C.M.A. 268, 15 C.M.R. 268 (1954).

Despite this paucity of current authority, a proper analysis can be developed by a careful reading of the Manual and the cases. Proof of rape requires (1) that the accused have intercourse with a woman not his wife and (2) that the act be done by force and without her consent. Article 120, U.C.M.J., 10 U.S.C. § 920; para. 199*a,* M.C.M. Proof of the first element is not at issue here. It is the second element that requires scrutiny.

As successive revisions of the Manual have attempted to clarify the proof required to show lack of consent, the place, if any, of a victim's resistance in such proof seems to have played an increasingly central role. *See* part III, *infra.* It is well-established that a victim need not resist to her utmost to foil her attacker's advances. *United States v. Moore,* 15 M.J. 354, 373 (C.M.A.1983) (Everett, C.J., dissenting); *United States v. Henderson, supra,* at 273. It is equally clear that in some circumstances, no resistance at all is required. *Moore, supra,* at 373; *United States v. DeJonge,* 16 M.J. 974 (A.F.C.M.R.1983). Indeed, the level of resistance that may support a conviction of rape varies widely. It is merely one factor to be considered among all the circumstances of the case. *Henderson* and *DeJonge,* both, *supra; United States v. Burton,* 50 C.M.R. 547 (A.F.C.M.R.1975); *United States v. Lewis,* 6 M.J. 581 (A.C.M.R.1978); *United States v. King,* 13 C.M.R. 261 (A.C.M.R.1953). In short, a woman's resistance, or lack thereof, ordinarily is not dispositive or even necessary to prove that the accused is guilty of rape.

On the other hand, a woman's resistance becomes *exceedingly* significant when an accused attempts to raise the inference of consent provided by M.C.M. 199*a.* If a woman, in the proof of her case, neglects or fails to show that she "took such measures as were called for by the circumstances," she opens the door for the accused to raise a permissible inference that she consented. If, on the other hand, (1) the woman took such measures of resistance, (2) her resistance would have been futile, (3) her resistance was overcome by threats of great bodily harm, or (4) she was physically or mentally unable to resist, the door closes to such an inference.

Thus, the importance of a woman's resistance in a rape case is related primarily to whether or not it raises a permissible inference on the accused's behalf that she consented to the act of intercourse. It is imperative that all those concerned with the administration of military justice recognize that reasonable resistance by the victim is not a requisite element of the crime of rape. *Small* and *Steele* erred when they stated that a woman *must* reasonably resist or be deemed to have consented. The level of a woman's resistance is only one of a number of factors to be considered "in light of all the circumstances," in determining whether the "lack of consent" element of a rape is satisfied. *United States v. Henderson, supra,* at 273; *see also United States v. DeJonge, supra,* at 976. A victim's failure to resist usually entitles an accused to argue that the fact finder may permissibly infer consent to his act of intercourse. But, it decidedly does not entitle an accused to insist that the fact finder presume that the victim consented. The accused is entitled to a permissible inference. M.C.M., para. 199*a.* He is not entitled to a presumption.

### III

As set forth to this point, my analysis simply outlines the current case law interpreting the Manual's comments on U.C. M.J. Art. 120. Although rejecting a requirement that the victim show "reasonable" resistance, it does not directly address the question of whether a victim must show "some" resistance. An extension of this analysis of the Manual and Code, however, also reveals that neither requires that a rape victim manifest any specific level of resistance, whatsoever.

The standard of proof needed to show lack of consent to rape is something "more than mere lack of acquiescence." M.C.M., para. 199*a.* This standard, initially established as a change to the current edition of the Manual for Courts-Martial, represents a significant change from its precursor in the 1951 Manual and a total departure from the 1949 Manual.

The current, 1969 (Rev.), version of 199*a* does not contain a single sentence identical to the 1949 version.[1] The only sentence taken intact from the 1951 version is the one directing all circumstances be considered in determining a woman's consent.[2] The current 199*a* elaborates on the consent issue, narrows the scope of the permissible consent inference and substitutes "more than a mere lack of acquiescence" as the lack of consent required.

A basic rule of construction is that words are chosen deliberately and should be interpreted according to their ordinary meaning. This maxim is even stronger when a text is revised. Where specific changes are made it is totally illogical to purport that no changes were meant. *Contra United States v. Burns,* 9 M.J. 706 (N.M.C.M.R.

1. "Force and want of consent are indispensable in rape; but the force involved in the act of penetration is alone sufficient if there is no consent.

 Mere verbal protestations and a pretense of resistance are not sufficient to show want of consent, and if a woman fails to take such measures to frustrate the execution of a man's design as she is able to take and are called for by the circumstances, the inference may be drawn that she did in fact consent." M.C.M. 1949, para. 179*b.*

2. "Force and want of consent are indispensable to the offense, but the force involved in the act of penetration will suffice if there is no consent. Any penetration, however slight, is sufficient to complete the offense (Art. 120(c)).

 Mere verbal protestations and a pretense of resistance are not sufficient to show want of consent, and if a woman fails to take such measures to frustrate the execution of a man's design as she is able to take and are called for by the circumstances, the inference may be drawn that she did in fact consent. All the surrounding circumstances are to be considered in determining whether a woman gave her consent, or whether she failed or ceased to resist only because of a reasonable fear of death or grievous bodily harm. . . .

 If there be actual consent, although obtained by fraud, the act is not rape, but if to the accused's knowledge the woman is of unsound mind or unconscious to an extent rendering her incapable of giving consent, the act is rape. Likewise, the acquiescence of a female child of such tender years that she is incapable of understanding the nature of the act, is not consent." M.C.M. 1951, para. 199*a.*

1980). Facially, the current 199*a* is far different from the paragraph explained by the Court of Military Appeals in *Henderson.* In my view, this difference is deliberate and significant.

The last time the Court of Military Appeals gave a detailed analysis of rape and the interplay of para. 199*a* was in *Henderson, supra.* Since then, the law surrounding rape has significantly evolved as evidenced by both case law and extensive Manual changes. In *Henderson,* Judge Brosman noted the evolution of the law as he rejected the old rule that required "resistance to the uttermost." *Id.* at 273. Chief Judge Everett has also recently noted that the "requirements of resistance in rape cases have been greatly mitigated over the years." *United States v. Moore,* 15 M.J. 354, 374 (C.M.A.1983). I find that mitigation to be complete.

The key to an analysis of rape is, and has always been, the issue of consent. The 1949, 1951 and 1969 Manuals all provide that where there in no consent, force used in the act of penetration is, in and of itself, sufficient to prove the final element of rape. M.C.M., 1949, para. 179*b;* M.C.M. 1951, para. 199*a;* M.C.M. 1969 (Rev.), para. 199*a.* It is not necessary for a court to use tortuous logic to excuse a victim's lack of resistance. *United States v. DeJonge supra; United States v. Burton, supra; United States v. Burt,* 45 C.M.R. 557 (A.F. C.M.R.1972). If, in weighing all the surrounding circumstances, a trier of fact finds that the victim did not consent, the victim's level of resistance is irrelevant. Where there is no consent, the force used in the act of penetration is sufficient to prove the force element. M.C.M. para. 199*a.* Given force and lack of consent, (and assuming proof of the first element) rape is proven. Where the issue of consent is unclear, the victim's level of resistance is simply one factor that may be weighed by the fact-finders.

Any other standard assumes that an accused is privileged to approach potential victims and unless these victims resist to some level, the attacker is free to hop from bed to bed imposing his will to whatever level he desires. Recognizing that rape is relatively easy to allege and harder to defend, the Manual places the burden on the victim to prove the negative, that she did not consent. Furthermore, it creates a permissible inference for the defendant if the victim does not resist to a reasonable level. Neither the Manual nor the Code impose a duty on the victim that she display some level of resistance. All she is required to prove is that her lack of consent was more than mere lack of acquiescence. Here, the victim said, "no." Absent the fact-finder's accepting the permissible inference raised by the accused, the victim's lack of consent is thereby established.[3] Any other rule would be "neither justice, law, nor sound reason." *Henderson, supra,* at 273.

## IV

Here, the issue centers on whether the victim demonstrated her lack of consent beyond a mere lack of acquiescence. She expressly declined her attackers' demands, initially struggled to escape, and was threatened with harm if she continued to resist. I find the level of her resistance to have been less than that which would have been exercised by a reasonable woman under similar circumstances. Ergo, the fact-finders could have inferred that she consented to her attackers. M.C.M. para. 199 *a.* They did not and I do not. Because, in light of all the evidence, it is clear that the victim did not consent, the elements of rape were established.

I concur with my brethren that the findings of guilty and the sentence should be

AFFIRMED.

---

3. *Black's Law Dictionary,* 5th ed., defines "acquiescence" as, "Conduct recognizing the existence of a transaction, and intended, in some extent at least, to ... permit it to be carried into effect." Here, by establishing that the victim engaged in no such conduct, the Government established her "lack of acquiescence." By additionally establishing that the victim engaged in conduct intended to prevent the rape from occurring (she said "no"), it demonstrated "more than [a] mere lack of acquiescence."