# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39142**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Clint A. WILLIAMS**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 6 March 2018

————————————

*Military Judge:* Tiffany M. Wagner.

*Approved sentence:* Dishonorable discharge, confinement for 6 months, and reduction to E-1. Sentence adjudged 7 May 2016 by GCM convened at Hanscom Air Force Base, Massachusetts.

*For Appellant:* Major Jarett F. Merk, USAF.

*For Appellee:* Major Cara Condit, USAF; Major Tyler B. Musselman, USAF; Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, MINK, and DENNIS, *Appellate Military Judges*.

Chief Judge MAYBERRY delivered the opinion of the court, in which Judge MINK and Judge DENNIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

MAYBERRY, Chief Judge:

Appellant was found guilty by a panel of officer members, contrary to his pleas, of two specifications of sexual assault and one specification of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice

(UCMJ), 10 U.S.C. § 920.[1] The court-martial sentenced Appellant to a dishonorable discharge, confinement for six months, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged, after deferring the reduction in rank until the date of action and waiving mandatory forfeitures for a period of six months or until Appellant's release from confinement, whichever was sooner, for the benefit of Appellant's wife and two children.

Appellant raises one assignment of error for consideration on appeal: The evidence is legally and factually insufficient as to Specification 4 of the Charge because there was no evidence that Appellant digitally penetrated Airman First Class (A1C) AC-M[2] while she was awake. We agree to the extent that the evidence does not support a finding of digital penetration, but the evidence does support an attempt by Appellant to digitally penetrate A1C AC-M while she was awake.

## I. BACKGROUND

Appellant's convictions involve a single complainant, A1C AC-M, and concern events that occurred on the morning of 26 April 2015 at Senior Airman (SrA) KP's apartment. Appellant does not challenge his conviction for kissing A1C AC-M on her face with his mouth and touching her breasts with his hand with the intent to gratify his sexual desire without her consent. Appellant also does not challenge his conviction for digitally penetrating her vagina with his finger when he knew or reasonably should have known A1C AC-M was asleep. Appellant challenges his conviction only to the extent that there was any evidence to support two separate findings of digital penetration of A1C AC-M, specifically because there was no evidence that Appellant digitally penetrated her while she was awake.

Appellant was married with two children. A1C AC-M was not his wife, nor were they involved in a romantic relationship. Appellant and A1C AC-M were both assigned to the same squadron and had common friends, including SrA KP. On the evening of 25 April 2015, SrA KP invited Appellant and A1C AC-M to SrA KP's home. The get-together was a simple gathering of friends, with a plan to drink and play some games. A1C AC-M testified that she intended to spend the night at the home because of its distance from Hanscom Air Force Base, where she lived. Four people were at SrA KP's apartment on the night in question, and the court members heard evidence as to what took place from

---

[1] The court members also found Appellant not guilty of two specifications of sexual assault in violation of Article 120, UCMJ.

[2] By the time of trial A1C AC-M had been promoted to Senior Airman (SrA) but we will refer to her rank at the time of the charge.

each of those individuals. Everyone had been drinking, and A1C AC-M was the first to go to bed. Neither SrA KP nor his boyfriend personally observed any of the conduct giving rise to the Charge and its Specifications.

A1C AC-M testified that the others were already drinking and eating pizza when she arrived around 2230 hours. She considered Appellant a good friend. That night, like on many other previous occasions, they discussed various issues in their lives, including A1C AC-M's relationship with SrA FA. Sometime after the sun was coming up, A1C AC-M went to sleep on an air mattress in the living room. When she awoke, she was lying on her back with her pants and underwear down at her knees. Appellant was lying next to her with his fingers inside her vagina. A1C AC-M testified as follows:

> Q: So, what did you do when you wake up and you realize his fingers are inside of you?
> A: I turned over to my side.
> . . .
>
> Q: When you turned to your side, did his fingers come out of you?
> A: *Yes.*
>
> Q: And what did he do next?
> A: *I know he continued to try to finger me from the position that I was in.* I guess you could say from behind.
> . . .
>
> Q: So, when you turned, you said that his fingers came out of you and you are kind of turning away from him kissing you, what happened next after you turned?
> A: *He continued to try to insert his fingers into my vagina.*
>
> Q: And did he – did he stop kissing you on your body or – I mean, what else was going on, if anything, at the time?
> A: No. He didn't try to kiss me again after I had moved. *It was just more of him, again, trying to, I guess, finger me you could say.*
>
> Q: And what was your reaction to that?
> A: I tried to pull in my body closer, so I was in the fetal position and I tried to – maybe I could put my feet in the way so he wouldn't have access anymore.
>
> Q: So, were you successful when you tried to move away?
> A: *No.*
> . . .
>
> Q: And, when did he stop?

A: *He continued to try to finger me…*

(Emphasis added).

A1C AC-M further testified that she did not leave SrA KP's apartment until around noon on 26 April 2015, after an unknown amount of time had passed since Appellant stopped touching her. Appellant was still asleep on the air mattress when she departed. In the days following the get-together, A1C AC-M relayed various versions of what took place to a number of people. Those versions included that she woke up to find her pants unbuttoned and Appellant masturbating and trying to touch her; that she could not fight him off because she was in and out of sleep; that she woke up on her side; that she woke up to Appellant's fingers inside of her and him trying to take off her pants, where she was trying to fight him off, but her body was numb;[3] and that she woke up to Appellant pulling her pants and underwear down, then touching her vaginal area, at which time she said "no," got up, and then left.

Appellant was interviewed by the Air Force Office of Special Investigations (AFOSI) approximately two weeks after the alleged assault. From the outset of the interview Appellant asserted that he had significant memory issues stemming from a motorcycle accident a few years prior. Appellant further stated that the accident left him with traumatic brain injury and cognitive impairment and that he was currently taking prescription medications as a result. The AFOSI interview lasted almost four and one half hours, and for the better part of three hours, Appellant repeatedly told AFOSI that he had no memory of the night in question after consuming the last round of alcoholic shots.

Although Appellant did not testify at trial, almost three and one half hours of the video of his AFOSI interview was played in open court for the members. Appellant told AFOSI he learned of the allegations on 27 April 2015, when a trusted friend, SrA FA (A1C AC-M's ex-boyfriend), informed him of what A1C AC-M had alleged. Additionally, Appellant told AFOSI, "if they said it's true, then it's true . . . I don't remember any of it." The lead AFOSI agent told Appellant that the agent did not believe Appellant did not remember and that Appellant was hiding behind his accident and memory lapses.

Three hours into the interview, Appellant admitted he inserted his fingers into A1C AC-M's vagina while she was sleeping. He went on to state that at some point A1C AC-M woke up, but "she kind of moved . . . [he didn't] think her eyes were open . . . she was probably asleep . . . [he] thought she woke up

---

[3] The recipient, SrA FA interpreted this to mean there was a physical struggle.

during . . . just stayed there." Appellant also provided a sworn written statement and wrote,

> A strange urge came over me to try to wake her up by a sexual sensation. So I unbuttoned her pants and withdrew them to her knees. I slid my fingers down and began to finger her vagina. After a few minutes, I slid my fingers into her vagina deep . . . I used my left index finger and right middle finger to penetrate the vagina.

SrA FA testified that when he confronted Appellant with the allegations, Appellant looked shocked and confused and was shaking but never denied any of the allegations. Appellant's DNA was found inside A1C AC-M's bra. While there was semen found in A1C AC-M's underwear, the DNA was not consistent with Appellant's. The members were not instructed on any lesser included offenses (LIOs). During deliberations on findings, the members requested A1C AC-M's testimony be replayed for them, including the part of the testimony excerpted above and referencing the two sexual acts. The members also asked for a transcript of Appellant's AFOSI video interview starting at the 3:08 time mark because they were having difficulty hearing the sound on the laptop provided to them.[4]

## II. DISCUSSION

### A. Law

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The term "beyond a reasonable doubt" does not mean that the evidence must be "free from conflict." *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986) (citing *United States v. Steward*, 18 M.J. 506 (A.F.C.M.R. 1984)). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed

---

[4] Ultimately, external speakers were provided to the members to allow them to listen to the video interview in the deliberation room so there was no need for a transcript.

the witnesses, the court is convinced of the Appellant's guilt beyond a reasonable doubt. *United States v. Reed,* 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *Turner,* 25 M.J. at 325 (C.M.A. 1987)).

"[A]n appellate court may disapprove a finding because proof of an essential element is lacking or, as a result of instructional errors concerning lesser-included offenses, may substitute a lesser-included offense for the disapproved findings. This is true even if the lesser-included offense was neither considered nor instructed upon at the trial of the case." *United States v. Upham*, 66 M.J. 83, 88 (C.A.A.F. 2008) (quoting *United States v. McKinley,* 27 M.J. 78, 79 (C.M.A. 1988); *but see United States v. McCracken*, 67 M.J. 467, 468 (C.A.A.F. 2009) ("[A]n appellate court may not affirm an included offense 'on a theory not presented to the' trier of fact.").

## B. Analysis

Appellant was charged with two separate instances of digital penetration of A1C AC-M, one while he knew or should have known that she was asleep and one while she was awake and did not consent. The members convicted Appellant of both. Appellant asserts on appeal that the evidence introduced at trial consisted only of a single instance of digital penetration—while A1C AC-M was asleep.

While A1C AC-M provided differing details regarding some aspects of what she alleged Appellant did to her, details regarding the offenses of which he was convicted were corroborated by Appellant's statements to AFOSI. There was evidence of penetration while she was asleep and efforts by Appellant to again digitally penetrate her vagina after she awoke. The only issue is whether his finger actually penetrated. We agree with the Government that Appellant's statement that he used fingers on two different hands supports A1C AC-M's contention that she changed positions. However, we are not persuaded that the mere changing of position alone supports a conclusion that Appellant penetrated her after she moved. Instead, after making allowances for not having personally observed the witnesses, we find A1C AC-M's testimony that Appellant kept *trying* to re-insert his fingers into her vagina more significant than Appellant's statement to AFOSI that he used two different fingers. Based on the evidence presented at trial, neither we nor a reasonable factfinder could be convinced of Appellant's guilt beyond a reasonable doubt to a second digital penetration after A1C AC-M woke up. We find the evidence both legally and factually insufficient to sustain the conviction for the second penetration offense.

Despite determining the evidence was legally and factually insufficient to sustain the conviction for the second penetration offense, we nonetheless affirm so much of the finding that includes an LIO. *See* Article 59(b), UCMJ, 10

U.S.C. § 859(b). An act done with the specific intent to commit an offense and amounting to more than mere preparation and tending, even though failing, to effect its commission is an attempt to commit that offense. Article 80(a), UCMJ, 10 U.S.C. § 880(a). As a result, we find that the evidence was factually and legally sufficient to sustain a conviction for the LIO of attempted sexual assault for the second penetration offense.

## C. Sentence Reassessment

Having set aside a finding of guilty to one of the specifications, we must now "determine what sentence the court-martial would probably have adjudged if the error had not been committed at trial." *United States v. Davis*, 48 M.J. 494, 495 (C.A.A.F. 1998). This court has "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has held that a court of criminal appeals can reassess a sentence to cure the effect of prejudicial error where that court can be confident "that, absent any error, the sentence adjudged would have been of at least a certain severity." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

In determining whether to reassess a sentence or to order a rehearing, we consider the totality of the circumstances with the following as illustrative factors: (1) dramatic changes in the penalty landscape and exposure, (2) the forum, (3) whether the remaining offenses capture the gravamen of the criminal conduct, (4) whether significant or aggravating circumstances remain admissible and relevant, and (5) whether the remaining offenses are the type with which we as appellate judges have the experience and familiarity to reliably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15–16.

Because of our finding of guilty for an LIO, there is no change in the penalty landscape. Under the totality of the circumstances, we are confident we can reliably determine that the members would have imposed no less than the same sentence whether Appellant was convicted of two specifications of sexual assault or one specification of sexual assault and one of attempted sexual assault. Our finding did not involve the exclusion of evidence resulting in an entire offense being removed from the members' purview or a reduction to a less culpable state of mind. It simply involved an assessment as to whether the evidence established actual penetration vice attempted penetration. The evidence of Appellant's culpability and the harm inflicted on A1C AC-M remained exactly the same. We conclude that sentence reassessment is appropriate in this case.

The adjudged sentence consisted of a dishonorable discharge, confinement for six months, and reduction to the grade of E-1. The dishonorable discharge

is mandatory in this case. The members asked the military judge if the dishonorable discharge disqualified Appellant from Veteran's Affairs (VA) support and benefits, going on to ask if there was any sentence they could impose that left Appellant's VA benefits intact. Appellant remains convicted of one specification of sexual assault and one specification of abusive sexual contact in violation of Article 120, UCMJ. We find him guilty of one specification of attempted sexual assault. We reassess the sentence to be the same as the sentence adjudged.

## III. CONCLUSION

The finding of guilty of Specification 4 of the Charge alleging sexual assault is **SET ASIDE**, substituting therefor a finding of guilty to the LIO of attempted sexual assault. All other findings are affirmed.

The findings, as modified, and the sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). They are accordingly **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court